## WESTERN UNION TELEGRAPH COMPANY *v.* JAMES.

### ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 206.   Argued and submitted April 2, 1896. — Decided May 4, 1896.

The statute of the State of Georgia of October 22, 1887, requiring every telegraph company with a line of wires, wholly or partly within that State, to receive dispatches, and, on payment of the usual charges, to transmit and deliver them with due diligence, under a penalty of one hundred dollars, is a valid exercise of the power of the State in relation to messages by telegraph from points outside of and directed to some point within the State.

THE case is stated in the opinion.

*Mr. John F. Dillon,* (with whom were *Mr. George H. Fearons* and *Mr. Rush Taggart* on the brief,) for plaintiff in error.

No appearance for defendant in error.

Mr. Justice Peckham delivered the opinion of the court.

This action was brought by the defendant in error against the telegraph company to recover the amount of a penalty which the plaintiff below alleged the company had incurred, and also to recover damages which the plaintiff alleged he had sustained by reason of the failure of the company to promptly deliver a telegraphic dispatch directed to plaintiff at his residence in Blakely, in the State of Georgia.

The statute under which the action was brought was passed by the legislature of the above named State, October 22, 1887, and reads as follows:

"An act to prescribe the duty of electric telegraph companies as to receiving and transmitting dispatches, to prescribe penalties for violations thereof, and for other purposes.

"Sec. 1. Be it enacted by the general assembly of the State of Georgia, and it is hereby enacted by authority of the same, that from and after the passage of this act, every electric telegraph company with a line of wires, wholly or partly in this State, and engaged in telegraphing for the public, shall, during the usual office hours, receive dispatches, whether from other telegraphic lines or from individuals; and, on payment of the usual charges according to the regulations of such company, shall transmit and deliver the same with impartiality and good faith, and with due diligence, under penalty of one hundred dollars, which penalty may be recovered by suit in a justice or other court having jurisdiction thereof, by either the sender of the dispatch, or the person to whom sent or directed, whichever may first sue: *Provided*, that nothing herein shall be construed as impairing or in any way modifying the right of any person to recover damages for any such breach of contract or duty by any telegraph company, and said penalty and said damages may, if the party so elect, be recovered in the same suit.

"Sec. 2. Be it further enacted, that such companies shall deliver all dispatches to the persons to whom the same are addressed or to their agents, on payment of any charges due for the same. *Provided*, such persons or agents reside within

one mile of the telegraphic station or within the city or town
in which such station is.

"Sec. 3. Be it further enacted, that in all cases the liability
of said companies for messages in cipher, in whole or in part,
shall be the same as though the same were not in cipher.

"Sec. 4. Be it further enacted, that all laws or parts of
laws in conflict with this act be, and the same are hereby,
repealed."

The plaintiff recovered in the trial court the statutory pen-
alty of $100, sued for, and also the sum of $242.60 damages,
for the non-delivery of the telegram in question, and upon
appeal to the Supreme Court of Georgia that court reversed
the judgment as far as it was based upon the actual damages
claimed but affirmed it for the penalty of $100, provided for by
the statute above quoted. Under the direction of the Supreme
Court the plaintiff remitted the claim for damages, and accord-
ingly the judgment for the penalty and for costs was affirmed,
and from that judgment the company prosecuted a writ of
error from this court.

The defendant by its answer denied that it had been guilty
of any violation of the statute in question, and among other
defences it set up by an amended plea that the plaintiff ought
not to recover the statutory penalty of $100 sued for, because
the message in question was an interstate message and part of
interstate commerce. Upon the trial the court in its charge to
the jury stated: "I charge you that if the defendant telegraph
company undertook to transmit to this place a message which
had been paid for at the other end of the line and did fail to
deliver the message to James within a reasonable time from
the time it was received, the plaintiff is entitled to recover for
the failure to deliver $100 as a penalty fixed upon that act by
law." The court also charged as follows: "I charge you that
if you find that the message was not delivered within a reason-
able time under the attending circumstances, your verdict
should be for the plaintiff upon both propositions," which in-
cluded the claim for the penalty and for actual damages.

The following facts are stated in the bill of exceptions: The
plaintiff, who was a cotton merchant in Blakely, Georgia, on

the 4th day of November, 1890, sent a message from his residence to Tullis & Co., who were in the same business in Eufaula, in the State of Alabama, offering to sell certain cotton on terms named in the message, and asked to have an answer that night.  Tullis & Co. received the message on that day and at once sent a message in reply accepting the offer of the plaintiff upon certain conditions.  This message was received at Blakely late in the evening of November 4, but was not delivered until the morning of November 5.  The plaintiff alleged that the delivery was not made with due diligence, and the result of the delay in the delivery of the message was as he stated, the loss of the sale of the cotton upon the terms mentioned in the message.  He therefore brought his action to recover both the penalty and the actual damages which he alleged he had sustained by reason of this failure on the part of the company to deliver the message with due diligence.  By the decision of the Supreme Court the claim for damages was not sustained, and the judgment given was solely for the penalty.

The only question, therefore, before this court is whether the statute of the State of Georgia, providing for the recovery of such penalty, is a valid exercise of the power of the State in relation to messages by telegraph from points outside and directed to some point within the State of Georgia.

The plaintiff in error insists that the act in question is a violation of that portion of section 8 of Article I of the Federal Constitution, which empowers Congress "to regulate commerce with foreign nations and among the several States and with the Indian tribes."  The validity of the statute is based upon the general power of the State to enact such laws in relation to persons and property within its borders as may promote the public health, the public morals and the general prosperity and safety of its inhabitants.  This power is somewhat generally described as the police power of the State, a detailed definition of which has been said to be difficult, if not impossible to give.  However extensive the power may be, it cannot encroach upon the powers of the Federal government in regard to rights granted or secured by the Federal

Constitution. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 661; *Walling* v. *Michigan*, 116 U. S. 446, 460; *Gulf, Colorado & Santa Fé Railway* v. *Hefley*, 158 U. S. 98.

It has been settled by the adjudications of this court that telegraph lines, when extending through different States, are instruments of commerce which are protected by the above clause in the Federal Constitution, and that the messages passing over such lines from one State to another constitute a portion of commerce itself. *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 U. S. 1; *Telegraph Co.* v. *Texas*, 105 U. S. 460; *Western Union Telegraph Co.* v. *Pendleton*, 122 U. S. 347. Such messages come within the protecting clause of the Constitution just quoted, and if the statute in question can be construed as regulating commerce between the States, the statute would be invalid on that account.

The Congress of the United States, by the act of July 24, 1866, c. 230, 14 Stat. 221, legislated upon the subject of telegraph companies. That legislation has become a part of the United States Revised Statutes, §§ 5263 to 5269, both inclusive. The sections referred to do not, however, touch the subject-matter of the delivery of messages as provided for in the state statute. The provision in the section of the Revised Statutes as to the precedence to be given to the messages of officers of the government in relation to their official business are not inconsistent with or in any manner opposed to the provisions of the Georgia act, nor are they upon the same subject within the meaning of the rule which permits state legislation in some instances only until Congress shall have spoken.

The company now contends that under the cases decided in this court, some of which are above cited, and by reason of the act of Congress just mentioned, it is so far within the commerce clause of the Federal Constitution as to be protected from any state legislation of the character of the act in question. It is urged that although there is no statute of Congress expressly providing a penalty for a failure to deliver telegraphic messages impartially and with due diligence, yet, still the very fact of the absence of such legisla-

tion is equivalent to a declaration by Congress that no penalty should be affixed, and that the company should bo left free to pursue its business untrammelled by any state legislation upon the subject.

In regard to those matters relating to commerce which are not of a nature to be affected by locality, but which necessarily ought to be the same over the whole country, it has been frequently held that the silence of Congress upon such a subject, over which it had unquestioned jurisdiction, was equivalent to a declaration that in those respects commerce should be free and unregulated by any statutory enactment. *Welton* v. *Missouri,* 91 U. S. 275, 282; *Hall* v. *De Cuir,* 95 U. S. 485, 490. The matters upon which the silence of Congress is equivalent to affirmative legislation are national in their character, and such as to fairly require uniformity of regulation upon the subject-matter involved affecting all the States alike. *Mobile County* v. *Kimball,* 102 U. S. 691.

In *Covington &c. Bridge Co.* v. *Kentucky,* 154 U. S. 204, 209, Mr. Justice Brown, in delivering the opinion of the court, said: "The adjudications of this court with respect to the power of the State over the general subject of commerce are divisible into three classes: First, those in which the power of the State is exclusive; second, those in which the States may act in the absence of legislation by Congress; third, those in which the action of Congress is exclusive and the State cannot interfere at all." On page 211 of the report are cited many cases as coming within the second class, among which are laws for the regulation of pilots; for quarantine and inspection; for policing harbors; improving navigable channels; regulating wharves, piers and docks; constructing dams and bridges across navigable waters of a State; and also laws for the establishment of ferries. In relation to the power of Congress to regulate commerce in cases of the second class, it is said that it is not its mere existence but its exercise by Congress which may be incompatible with the exercise of the same power by States, and that the States may legislate in the absence of Congressional regulations. *Sturges* v. *Crowninshield,* 4 Wheat. 122, 193. When the sub-

jects in regard to which the laws are enacted, instead of being of a local nature affecting interstate commerce but incidentally, are national in their character, then the non-action of Congress indicates its will that such commerce shall be free and untrammelled. It has been held that it is not every enactment which may incidentally affect commerce and the persons engaged in it that necessarily constitutes a regulation of commerce within the meaning of the Constitution. *Sherlock* v. *Alling*, 93 U. S. 99; *State Tax on Railway Gross Receipts*, 15 Wall. 284; *Mobile County* v. *Kimball*, 102 U. S. 691; *Smith* v. *Alabama*, 124 U. S. 465. A state statute was held valid in this last cited case, which provided for an examination of engineers of locomotives by a state board of examiners, and it was applied to an engineer engaged in running a locomotive on one continuous trip from Mobile in Alabama to Corinth in Mississippi. It was held to be a valid police regulation.

Legislation which is a mere aid to commerce may be enacted by a State, although at the same time it may incidentally affect commerce itself. *Mobile County* v. *Kimball*, 102 U. S., already cited.

On the other hand, a state statute which only assumed to regulate those engaged in interstate commerce, while passing through the particular State, has been held void because it in effect and necessarily regulated and controlled the conduct of such persons throughout the entire voyage, which stretched through several States. Such is the case of *Hall* v. *De Cuir*, 95 U. S. 485, 489.

The statute in that case, after providing that common carriers of passengers should have the right to refuse certain classes of undesirable and improper persons passage on their vehicles, gave the power to carriers to expel such persons after admission, and also gave them power to expel all who should commit any act in violation of the rules and regulations prescribed for the management of the business of the carrier after such rules and regulations should have been made known, "provided such rules and regulations make no discrimination on account of race or color;" and the statute also

prohibited all persons engaged in the business of common carriers of passengers, except in the cases enumerated, from refusing admission to their conveyances or from expelling therefrom any person whatsoever. The plaintiff was a person of color and took passage upon the steamboat owned by the defendant's intestate on her trip up the river from New Orleans to Hermitage, both within the State of Louisiana. Being refused accommodations on account of her color in the cabin especially set apart for white persons, she brought an action under the provisions of the state act above referred to for the purpose of recovering damages sustained on account of such refusal. The defence set up was that the statute was inoperative and void as to the owner of the steamboat, because as to his business it was an attempt to regulate commerce among the States, and it was so held here. Although, in the case in question, the passage was taken from and to a point both of which were within the State of Louisiana, it was held that such fact was not material; that the effect of the statute necessarily was to regulate interstate commerce.

The court, speaking by Mr. Chief Justice Waite, said:

"While it purports only to control the carrier when engaged within the State, it must necessarily influence his conduct to some extent in the management of his business throughout his entire voyage. His disposition of passengers taken up and put down within the State, or taken up within to be carried without, cannot but affect in a greater or less degree those taken up without and brought within, and sometimes those taken up and put down without. A passenger in the cabin set apart for the use of whites without the State must, when the boat comes within, share the accommodations of that cabin with such colored persons as may come on board afterwards, if the law is enforced.

"It was to meet just such a case that the commercial clause in the Constitution was adopted. The river Mississippi passes through or along the borders of ten different States, and its tributaries reach many more. The commerce upon these waters is immense, and its regulation clearly a matter of national concern. If each State was at liberty to regulate the

conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship.  Each State could provide for its own passengers and regulate the transportation of its own freight, regardless of the interests of others.  Nay more, it could prescribe rules by which the carrier must be governed within the State in respect to passengers and property brought from without.   On one side of the river or its tributaries he might be required to observe one set of rules, and on the other another.   Commerce cannot flourish in the midst of such embarrassments.  No carrier of passengers can conduct his business with satisfaction to himself, or comfort to those employing him, if on one side of a state line his passengers, both white and colored, must be permitted to occupy the same cabin, and on the other be kept separate.   Uniformity in the regulations by which he is to be governed from one end to the other of his route is a necessity in the business, and to secure it Congress, which is untrammelled by state lines, has been invested with the exclusive legislative power of determining what such regulations shall be."

It is seen from this reasoning that the foundation for holding the act void was that it necessarily affected the conduct of the carrier and regulated him in the performance of his duties outside and beyond the limits of the State enacting the law.   A provision for the delivery of telegraphic messages arriving at a station within the State is not of the same nature as that statute and would have no such effect upon the conduct of the telegraph company with regard to the performance of its duties outside the State.

In *Western Union Telegraph Co.* v. *Pendleton*, 122 U. S. 347, 358, the State of Indiana required telegraph companies to deliver dispatches by messenger to the persons to whom the same were addressed, or to their agents, provided they resided within one mile of the telegraph company's station within the city or town within which such station was.   That statute was held to conflict with the clause of the Constitution of the United States which vests in Congress power to regulate commerce among the States in so far as it attempted

to regulate the delivery of such dispatches to places situate in other States, and it was said that the reserved police power of the State under the Constitution, although difficult to define, did not extend to the regulation of the delivery at points without the State of telegraphic messages received within the State. In that case the action was brought by Pendleton to recover of the telegraph company the penalty of $100, prescribed by statute for failing to deliver at Ottumwa, in the State of Iowa, a message received by the company in Indiana for transmission to that place. The action was brought in the State of Indiana and it was held that it was an attempt on the part of that State to enforce its own statute outside and beyond the territorial limits of the State. The object of vesting the power to regulate commerce in Congress, it was said by Mr. Justice Field speaking for the court in that case, was "to secure with reference to its subjects uniform regulations where such uniformity was practicable against conflicting state legislation. Such conflicting legislation would inevitably follow with reference to telegraphic communications between citizens of different States if each State was vested with power to control them beyond its own limits. The manner and order of the delivery of telegrams, as well as their transmission, would vary according to the judgment of each State." "Whatever authority the State may possess over the transmission and delivery of messages by telegraph companies within her limits, it does not extend to the delivery of messages in other States."

In *Telegraph Co.* v. *Texas*, 105 U. S. 460, it was held that a telegraph company in respect to its foreign and interstate business was an instrument of commerce subject to the regulating powers of Congress, and that state laws, so far as they imposed upon it a specific tax upon each message which it transmitted beyond the State, or which an officer of the United States sent over its lines on public business, were unconstitutional.

With this brief reference to some of the cases that have been decided in this court respecting the commerce clause in the Constitution, the question arises, which of the classes spoken

of in *Covington &c. Bridge Co.* v. *Kentucky*, 154 U. S. *supra*, 204, includes the statute under review? Is it a mere police regulation, that but incidentally affects commerce, such as *Smith* v. *Alabama*, 124 U. S. 465, and which, at any rate, would be valid until Congress should legislate upon the subject; or is it of such a nature, so extensive and national in character, that it could only be dealt with by Congress? We do not think it is the latter. It is not at all similar in its nature to the case above cited of *Hall* v. *De Cuir*, 95 U. S. 485. In one sense it affects the transmission of interstate messages, because such transmission is not completed until the message is delivered to the person to whom it is addressed, or reasonable diligence employed to deliver it. But the statute can be fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other States. It would not unfavorably affect or embarrass it in the course of its employment, and hence until Congress speaks upon the subject it would seem that such a statute must be valid. It is the duty of a telegraph company which receives a message for transmission, directed to an individual at one of its stations, to deliver that message to the person to whom it is addressed, with reasonable diligence and in good faith. That is a part of its contract, implied by taking the message and receiving payment therefor.

The statute in question is of a nature that is in aid of the performance of a duty of the company that would exist in the absence of any such statute, and it is in nowise obstructive of its duty as a telegraph company. It imposes a penalty for the purpose of enforcing this general duty of the company. The direction that the delivery of the message shall be made with impartiality and in good faith and with due diligence is not an addition to the duty which it would owe in the absence of such a statute. Can it be said that the imposition of a penalty for the violation of a duty which the company owed by the general law of the land is a regulation of or an obstruction to interstate commerce within the meaning of that clause of the Federal Constitution under discussion? We think not. No tax is laid upon any interstate message, nor is there any

regulation of a nature calculated to at all embarrass, obstruct or impede the company in the full and fair performance of its duty as an interstate sender of messages. We see no reason to fear any weakening of the protection of the constitutional provision as to commerce among the several States by holding that in regard to such a message as the one in question, although it comes from a place without the State, it is yet under the jurisdiction of the State where it is to be delivered, (after its arrival therein at the place of delivery,) at least so far as legislation of the State tends to enforce the performance of duty owed by the company under the general law. So long as Congress is silent upon the subject, we think it is within the power of the state government to enact legislation of the nature of this Georgia statute. It is not a case where the silence of Congress is equivalent to an express enactment. As has been said, this statute levies no tax and seeks no revenue from the company by reason of these interstate messages.

The case of *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, is an illustration of the invalidity of an attempt to tax persons or property received and landed within a State which had been transported from another State. It was there held that the tax was upon interstate commerce and a regulation thereof upon a matter national in character, requiring uniformity of regulation, and that, therefore, the power of Congress was exclusive. If Congress were silent, no exactions could be made or levied. In the case at bar there is no tax laid upon these messages, and no obstruction is placed in the way of the company in regard to the performance of any duty owed by it in connection with them. Instead of obstructing, this statute aids commerce. The subject of the act is not national in character nor is uniformity at all requisite. Conduct which might incur the penalty of $100 in one State might violate no statute in another, and in still a third might subject the carrier to a penalty of but $50, and yet there would exist no reason for uniformity of rule governing the subject, and the carrier would really suffer nothing from its absence.

Nor is the statute open to the same objections that were

regarded as fatal in the *Pendleton case*, 122 U. S. 347. No attempt is here made to enforce the provisions of the state statute beyond the limits of the State, and no other State could by legislative enactment affect in any degree the duty of the company in relation to the delivery of messages within the limits of the State of Georgia. No confusion therefore could be expected in carrying out within the limits of that State the provisions of the statute. It is true it provides a penalty for a violation of its terms and permits a recovery of the amount thereof irrespective of the question whether any actual damages have been sustained by the individual who brings the suit; but that is only a matter in aid of the performance of the general duty owed by the company. It is not a regulation of commerce, but a provision which only incidentally affects it. We do not mean to be understood as holding that any state law on this subject would be valid, even in the absence of Congressional legislation, if the penalty provided were so grossly excessive that the necessary operation of such legislation would be to impede interstate commerce. Our decision in this case would form no precedent for holding valid such legislation. It might then be urged that legislation of that character was not in aid of commerce, but was of a nature well calculated to harass and to impede it. While the penalty in the present statute is quite ample for a mere neglect to deliver in some cases, we cannot say that it is so unreasonable as to be outside of and beyond the jurisdiction of the State to enact.

While it is vitally important that commerce between the States should be unembarrassed by vexatious state regulations regarding it, yet on the other hand there are many occasions where the police power of the State can be properly exercised to insure a faithful and prompt performance of duty within the limits of the State upon the part of those who are engaged in interstate commerce. We think the statute in question is one of that class, and in the absence of any legislation by Congress the statute is a valid exercise of the power of the State over the subject.

Again, it is said that this company entered into a valid contract in Alabama with the sender of the message, which provided that it would not be liable for mistakes in its transmission beyond the sum received for sending the message, unless the sender ordered it to be repeated and paid half the sum in addition, and this statute changed the liability of the company as it would otherwise exist. The message was not repeated. This kind of a contract it is said was a reasonable one, and has been so held by this court. *Primrose v. Western Union Telegraph Co.*, 154 U. S. 1. This, however, is not an action by the person who sent the message from Alabama, and this plaintiff is not concerned with that contract, whatever it was. There was no mistake in the transmission of the message, and there was no breach of the agreement. The action here is not founded upon any agreement and the judgment neither affects nor violates the contract mentioned. Nor are we here concerned with the provisions of the third section of the act relating to the damages to be recovered in the case of cipher messages. This was not such a message, and this judgment is solely based upon the penalty granted by the statute for non-delivery, and could be sustained even if the third section of the act were not valid, which is a question we do not decide nor express any opinion concerning it. The residue of the act could stand without the third section. After a careful review of the case, we think the judgment is right and that it should be
                                                        *Affirmed.*

MR. JUSTICE SHIRAS and MR. JUSTICE WHITE dissent, and refer for their reasons to the case of *Western Union Telegraph Co. v. Pendleton*, 122 U. S. 347.