(147 App. Div. 881.)

HOVEY v. DE LONG HOOK & EYE CO.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. CORPORATIONS (§ 650*)—FOREIGN CORPORATIONS—STOCK BOOKS FOR INSPECTION—OFFICE FOR TRANSACTION OF BUSINESS.

Stock Corporation Law (Consol. Laws 1909, c. 59) § 33, requiring every foreign corporation "having an office for the transaction of business in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

this state" to keep a stock book therein open for inspection by enumerated persons, requires a foreign corporation which has an office in the state for the transaction of business in the state to keep in such office a stock book open for inspection, though it does not transact business in the office, and its failure so to do subjects it to the penalty imposed by the statute.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 650.*]

2. COMMERCE (§ 46*)—INTERSTATE COMMERCE—INTERFERENCE BY STATE LEGISLATION.

The statute, so construed, is not invalid as interfering with interstate commerce, since it does not regulate the business of foreign corporations or restrict them in any way in transacting business in the state, whether such business is interstate or not.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 100, 113, 126; Dec. Dig. § 46.*]

Miller and Scott, JJ., dissenting.

Appeal from Appellate Term.

Action by Le Roy F. Hovey against the De Long Hook & Eye Company. From a determination of the Appellate Term (126 N. Y. Supp. 1) reversing a judgment of the Municipal Court in favor of defendant, it, by permission, appeals. Determination of Appellate Term affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Charles E. Rushmore, for appellant.
L. S. Kafer, for respondent.

INGRAHAM, P. J. This action was brought to recover a penalty under section 33 of the stock corporation law (chapter 61 of the Laws of 1909 [Consol. Laws 1909, c. 59]). It is there provided that:

"Every foreign stock corporation having an office for the transaction of business in this state, except moneyed and railroad corporations, shall keep therein a book to be known as a stock book, containing the names alphabetically arranged, of all persons who are stockholders of the corporation. * * * Such stock book shall be open daily, during business hours, for the inspection of its stockholders and judgment creditors, and any officer of the state authorized by law to investigate the affairs of any such corporation. * * * For any refusal to allow such book to be inspected, such corporation and the officer or agent so refusing shall each forfeit the sum of two hundred and fifty dollars to be recovered by the person to whom such refusal was made."

I do not agree with Mr. Justice MILLER that this section is to be read in connection with other sections of the stock corporation law which require a corporation doing business in this state to obtain a certificate authorizing it to do such business, and to pay a tax for the privilege of doing such business, or which provide for the taxation of the property of a foreign corporation invested in this state. There is no question of taxation; no question of the regulation of business; no attempt to interfere in any way with any foreign corporation doing business in this state, regulating its business or restricting its authority to transact business or to procure an office in this

---

state for the transaction of business; and no attempt to interfere in the slightest degree with any of its business transactions.

[1] By that section the Legislature has made it the duty of a foreign corporation which has an office for the transaction of business in this state to keep in such office a book containing the names of all persons who are stockholders of the corporation. Any foreign corporation may or may not have an office in this state for the transaction of its business. It is not even necessary to show that business has actually been transacted in that office. As long as it has an office in this state for the transaction of business, it is the duty of the corporation maintaining such an office to comply with this provision of the statute. It seems to me clear from the testimony that this defendant does maintain such an office, and that any one wishing to transact business with the defendant can transact such business as the corporation desires to transact in this state at such office, and that the facts bring this corporation within the provisions of this statute, and that there was imposed upon this corporation the duty to keep in its office the stock book described. If the Legislature has power to require a foreign corporation that maintains such an office to keep such a book, it certainly has power to prescribe a penalty for refusing to obey its commands. If it had been intended to limit this provision to a corporation actually doing business in this state, the Legislature would have used the same language that it has used when requirements are made for a corporation doing business in this state. Here, as before stated, the statute is not confined to a corporation doing business here or having an office in which business is transacted, but provides for a corporation having an office for the transaction of business, and, where a corporation has such an office, it is required to keep therein a book containing a list of the stockholders.

[2] Nor do I think that this construction of the law could affect its validity under the Constitution of the United States. The statute, as before stated, does not attempt to regulate the business of the corporation or restrict it in any way in transacting its business in the state of New York whether that business is interstate business or not. A violation of its provisions does not in any way affect its subsequent transaction of business. It does not affect its right to continue to maintain an office for the transaction of business or for any other purpose. No tax is imposed upon the corporation or upon its business interstate or otherwise; but it gives to the person for whose benefit this book is to be maintained a right of action to recover a penalty for a violation of its provisions. Notwithstanding the great extension of federal interference with the action of the states, I cannot agree that a foreign corporation or a resident of another state coming to this state and opening an office here for the transaction of its business is so far beyond state control that, while maintaining such an office, the state cannot control its occupancy of the office and prescribe that while here occupying an office the corporation cannot refuse to observe the same regulations that the state imposes upon its own corporations for the benefit of their stockholders and creditors, and thus give to foreign corporations maintaining offices in this state a privilege which

is not awarded to domestic corporations or exempting such foreign corporations from the same obligations that rest upon domestic corporations. A foreign corporation would thus become the master of the state and conduct its operations here without being subject to any state control, merely because it is engaged in interstate commerce. I cannot believe that a state has been rendered so impotent that it must not only allow a foreign corporation to bring its goods and merchandise within this state for sale, but can own or occupy offices and business facilities here superior to any state regulation necessary for the protection of the citizens of this state who deal with it.

I think, therefore, the determination of the Appellate Term should be affirmed.

LAUGHLIN and CLARKE, JJ., concur.

MILLER, J. (dissenting). This is an action to recover the penalty prescribed by section 33 of the stock corporation law, and is brought for the defendant's refusal to allow the plaintiff, a stockholder, to inspect its stock book. The defendant, a foreign corporation organized under the laws of Pennsylvania, is engaged in the manufacture in the city of Philadelphia of certain products and in the sale thereof throughout the United States. It conducts its business from its main office in Philadelphia. It employs salesmen to solicit orders, and, for their convenience, it maintains headquarters at central points. It has one in the city of New York, where its salesmen conduct their correspondence and keep their samples, and where it employs a stenographer and typewriter and keeps a few dollars of petty cash for postage and the like. It keeps no merchandise, no books of account, and no bank account in this state. The orders are sent to the home office for acceptance or rejection, and all deliveries are made from Philadelphia. It pays all employés from the home office, and the petty cash, above referred to, is supplied from, and accounted for weekly to, the home office.

The state of Pennsylvania conferred upon the defendant its corporate franchise, i. e., the privilege of doing business as a corporation. The defendant exercises that franchise by conducting the business for which it was granted in that state. It employs incidental means in this state to obtain orders for its products, and, of course, strictly, that constitutes doing business. One of the means thus employed is an office, and so, literally, the defendant has an office for the transaction of business; but the question is whether it "has an office for the transaction of business in this state" within the intent and purpose of the statute.

Said section 33 is not to be construed apart from its context, nor is the statute of which it is a part to be construed without reference to other statutes on the subject. The particular ones, which I have in mind, are the general corporation law, relating to corporations generally, the stock corporation law, relating specifically to stock corporations, and article 9 of the tax law (Consol. Laws 1909, c. 60), relating to corporation taxes. A careful analysis of those statutes discloses a

consistent scheme for authorizing the doing of business in this state by corporations, domestic or foreign, and for the supervision, regulation, and taxation of corporations, thus authorized to do business. I shall refer only to such provisions as are necessary to outline the general scheme in so far as it is applicable to both domestic and foreign corporations. Sections 15 and 16 of the general corporation law (Consol. Laws 1909, c. 23), providing for the granting to foreign corporations of certificates of authority "to do business in this state," conform to earlier sections, relating to the organization of domestic corporations. Section 14 of the stock corporation law, prohibiting combinations for the creation of a monopoly, the unlawful restraint of trade, or the prevention of competition in any necessary of life, applies to domestic stock corporations and to foreign corporations "doing business in this state." The following section 15, relating to mergers, applies to domestic stock corporations and to foreign corporations "authorized to do business in this state." The particular section in question here is preceded by a section containing similar provisions with respect to domestic corporations and is followed by a section requiring every domestic stock corporation and every foreign stock corporation "doing business within this state," except moneyed and railroad corporations, to make annual reports. Section 70 of the stock corporation law provides that officers, directors, and stockholders of foreign stock corporations, "transacting business in this state," except moneyed and railroad corporations, shall be subject to the liabilities imposed on officers, directors, and stockholders of domestic corporations. Section 180 of the tax law imposes an organization tax on every stock corporation, incorporated under any law of this state, and section 181 imposes on every foreign corporation, except those enumerated, "authorized to do business under the general corporation law," a license tax "for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity in this state." The rate of tax in the two cases differs, but it is not necessary now to discuss the obvious reasons for that difference. Section 182 imposes a franchise tax on every corporation domestic or foreign "for the privilege of doing business or exercising its corporate franchises in this state." Argument seems unnecessary to show that said statutes are all parts of a single scheme of laws, relating to the doing of business by corporations, the exercise of corporate franchises, in this state; and I shall waste no words to prove that a distinction cannot be maintained between the "doing" and the "transaction" of business, expressions which are interchangeably used throughout the statutes.

It is settled that the defendant is not "doing business in this state" within the meaning of section 15 of the general corporation law (Cummer L. Co. v. Associated Mfrs. Ins. Co., 67 App. Div. 151, 73 N. Y. Supp. 668, affirmed 173 N. Y. 633, 66 N. E. 1106; Harvard Co. v. Wicht, 99 App. Div. 507, 91 N. Y. Supp. 48; Burrowes Co. v. Caplin, 127 App. Div. 317, 111 N. Y. Supp. 498; Page v. Sherwood [App. Div., First Dept., decided Oct. 1911] 131 N. Y. Supp. 322; Penn. Collieries Co. v. McKeever, 183 N. Y. 98, 75 N. E. 935, 2 L. R. A.

[N. S.] 127), or within the meaning of the tax law (People v. Commissioners of Taxes, 23 N. Y. 242; People ex rel. Sherwin v. Barker, 5 App. Div. 246, 39 N. Y. Supp. 151; Id., 149 N. Y. 623; People ex rel. Tower Co. v. Wells, 98 App. Div. 82, 90 N. Y. Supp. 313; Id., 182 N. Y. 553, 75 N. E. 1132). The conclusion necessarily follows that the defendant is not transacting business in this state within the meaning of said section 33.

We might stop the discussion at this point; but there is a further, and to my mind controlling, reason for holding that the statute was not intended to apply to a case like this, and it may serve a useful purpose to state that reason. I have said that the general purpose of the entire body of statutory law on the subject of corporations was to provide for their organization, or, in the case of foreign corporations, for their authorization to do business, for their effective supervision and regulation, and for their taxation. Authorization, regulation, and taxation are the objects, the "doing" or the "transaction" of business, the exercise of corporate franchises within the state, is the subject, of all the provisions. Even if said section 33 be construed as an independent enactment, the expressed purpose of the requirement of keeping a stock book is that it may be inspected by stockholders and judgment creditors and by "any officer of the state authorized by law to investigate the affairs of any such corporation." It was first enacted in its present form by chapter 384 of the Laws of 1897, which amended chapter 564 of the Laws of 1890 as amended by chapter 688 of the Laws of 1892, and was entitled "An act, to amend the stock corporation law, relating to annual reports and liabilities of officers, directors and stockholders of foreign stock corporations." The first section of said act of 1897 amended section 7, now section 14, relating to combinations in unlawful restraint of trade; the second section amended section 30, now section 34, so as to require annual reports of foreign as well as of domestic corporations; and the third section amended section 53, now said section 33 in question here. Said section 53 of the act of 1892 was section 56 of the act of 1890. In that act it immediately followed sections relating to the election of directors and the qualifications of stockholders to vote, and it merely provided that the transfer agent in this state of any foreign corporation should "during the usual hours of transacting business" exhibit to any stockholder the transfer book, and a list of the stockholders thereof. That section was a re-enactment of chapter 165 of the Laws of 1842. It is quite obvious that its primary purpose was to enable stockholders to obtain a list of other stockholders to use in influencing the election of directors, as was held to be the purpose of a somewhat similar statute relating to domestic corporations. See chapter 325 of the Laws of 1825; Hatch v. L. S. & M. S. R. R. Co., 11 Hun, 1–5. Thus the internal evidence of the section itself, its context, its history, and the general purview of the entire body of statutory law, of which it is a part, unmistakably show that its assumed purpose was directly to regulate the doing of business in this state by foreign corporations. If, therefore, it was intended to apply to a foreign corporation which merely employs instruments in this

state incidental to its conduct in another state of its interstate business, it would violate the commerce clause of the Constitution of the United States.

A corporation is not a citizen within the meaning of article 4, section 2, or the fourteenth amendment, of the federal Constitution. Paul v. Commonwealth of Virginia, 8 Wall. 168, 19 L. Ed. 357; Hooper v. State of California, 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297; Waters-Pierce Oil Co. v. Texas, 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657. Therefore the recognition by one state of corporations, created by other states, depends wholly upon principles of comity. A state may exclude or impose conditions upon the admission into it of foreign corporations; but the prohibition of, or the imposition of terms upon, the exercise by a foreign corporation of its corporate franchise within the state, is very different from the regulation of the interstate business of a foreign corporation, which exercises its corporate franchise in another state and employs no means or agencies in this state except as incidental thereto. A state may not prohibit, regulate, or impose conditions or burdens upon the doing of interstate business, whether conducted by natural persons or corporations. Norfolk & Western R. R. Co. v. Commonwealth of Penn., 136 U. S. 114, 10 Sup. Ct. 958, 34 L. Ed. 394; Crutcher v. Commonwealth of Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649; International Text-Book Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. Ed. 678. The mere having an office or place of business within the state does not subject a foreign corporation to the regulation of its laws. Attorney General v. Electric Storage Battery Co., 188 Mass. 239, 74 N. E. 467; Norfolk & Western R. R. Co. v. Commonwealth of Penn., supra; Green v. Chicago, B. & Q. R. R. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916.

The defendant gets no privilege from, and is not in any just sense exercising, its corporate franchise within this state. It gets the privilege or franchise of transacting business as a corporation from the state of Pennsylvania, and it exercises the corporate franchise, thus conferred in that state. The only privilege exercised by it in the state of New York is the privilege of doing an interstate business which it gets from the Congress of the United States whether from action or nonaction of that body is immaterial, for its jurisdiction is exclusive. The state of New York has no power to prohibit, regulate, or burden the exercise of that privilege.

As I have endeavored to show, the provision in question is a part of a statute and of a general scheme of laws which purport directly to regulate the doing of business within the state by corporations, or corporations doing business within the state. It is immaterial which expression is used, as both amount to one and the same thing. And it seems to me that it is not permissible to extract from the statute a single section and to construe it without regard to the purview of the entire act, even assuming that said section 33, thus extracted and construed, might be held to be applicable to the defendant. It is unnecessary, therefore, to consider whether, if applicable, it would be unconstitutional for imposing a burden on interstate commerce, or whether,

if construed as an exercise of the police power, only indircetly affecting commerce, it might be held to be valid within cases like Western Union Tel. Co. v. James, 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105; Chicago, M. & St. P. R. R. Co. v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; Lake Shore & Michigan Southern R. R. Co. v. Ohio, 173 U. S. 285, 19 Sup. Ct. 465, 43·L. Ed. 702. Construed according to its assumed and virtually expressed purpose, it is invalid, if applicable to the defendant. The alternative is to adopt a construction in harmony with the Constitution.

I have considered the expressions used in said statutes, "doing business," and "exercising corporate franchises," as synonymous, and it seems plain that they are so used. I am aware that it has been said that the so-called "franchise tax" on corporations (domestic and foreign) is, in respect to the latter "imposed solely on business," not on a corporate franchise (People v. Equitable Trust Co., 96 N. Y. 388), and that "a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created" (Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274). Any discussion in this connection of the nature of the artificial entity called a "corporation" would be purely academic. Many cases, bearing on the subject, may be found in the note to the case last above cited, published in the Lawyers' Edition of the Supreme Court Reports. A critical analysis of them will disclose that the apparent conflicts are almost wholly in the terminology employed. Many corporations do no business in the states of their creation, and in fact are never intended to do any. Upon their organization, they acquire the bare privilege or franchise of being corporate entities. When such a corporate entity by its agents goes into another state and seeks to do business, it finds that it has no existence there. that it is only recognized by comity, and that it can only do business or exercise its corporate franchises by permission. It is quite immaterial whether that permission be termed a "privilege" or a "franchise," though it seems to me that the "privilege" to do business within its jurisdiction, extended by one sovereign to intangible creatures of another sovereign, may well be termed a "franchise." In Home Insurance Co. of New York v. People of State of New York, 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025, Mr. Justice Field made a distinction between the franchise given to two or more persons to be a corporation or to do business in a corporate capacity, and the franchise which, when incorporated, the company may exercise; and in subsequent decisions of the Supreme Court the taxes imposed by this state on foreign corporations were considered as taxes imposed on the franchise to do business as a corporation within the state. See Horn Silver Mining Co. v. State of New York, 143 U. S. 305, 12 Sup. Ct. 403, 36 L. Ed. 164; People ex rel. Parke, Davis & Co. v. Roberts, 171 U. S. 658, 19 Sup. Ct. 58, 43 L. Ed. 323.

Foreign corporations, then, doing business or exercising their corporate franchises within this state, within the meaning of its laws, are subject to the regulation of those laws, irrespective of the nature of the business or whether it be interstate. People ex rel. Union Sulphur Co. v. Glynn, 125 App. Div. 328, 109 N. Y. Supp. 868, and cases cited.

But the power of the state depends on the exercise of the privilege or franchise to do business within the state in a corporate or organized capacity, not on the exercise of the privilege to do interstate business, which Congress alone can grant and regulate. The underlying principle, if I have discerned it, is that the corporation statutes of this state become operative upon foreign corporations only perforce of some privilege which the state has the power to grant or withhold. Those statutes, construed in the light of that principle, form a consistent scheme in harmony with the federal Constitution. I shall not hazard a general definition of what constitutes the exercise of a corporate franchise within this state. It is sufficient for this case to state a rule of exclusion, i. e., that the mere employment in this state of means and agencies as incident to the conduct in another state of an interstate business does not constitute the "doing" or the "transaction" of business or "the exercise of a corporate franchise" in the state within the meaning of its statutes.

The determination of the Appellate Term should be reversed, and the judgment of the Municipal Court affirmed, with costs.

SCOTT, J., concurs.