## J. A. MEADOWS v. POSTAL TELEGRAPH AND CABLE COMPANY.

(Filed 4 April, 1917.)

**Telegraphs—Commerce—Federal Control — Federal Decisions — Unrepeated Messages—Extra Charge.**

The amendment by Congress passed in 1910 to the Federal Employers' Liability Act subjects interstate messages by telegraph to the provisions of that act, requiring that charges therefor shall be reasonable, classifying them into day, night, repeated, unrepeated messages, etc., and permitting different rates to be charged for the different classes of messages. *Held,* Congress having assumed entire control of interstate messages, the decisions of the Federal courts are controlling, and thereunder a stipulation on the message blank that no recovery can be had beyond the toll paid for the message, unless repeated upon the payment of an extra charge, is valid and enforcible, when suit is brought upon the contract, in the courts of this State.

CIVIL ACTION, tried before *Lyon, J.*, and a jury, at November Term, 1916, of CRAVEN.

Plaintiff brought this action to recover damages for failure to transmit correctly and deliver the following telegram:

> J. A. MEADOWS,
>      *New Bern, N. C.*
>           Bot ten May corn 49 one-eighth
>                     GARDNER V. VA. NESS.

The message was sent under the following contract, which was printed on one of the company's blanks: "The Postal Telegraph-Cable Company (Incorporated) transmits and delivers this message subject to the terms and conditions printed on the back of this blank. Send the following message, without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to."

"The Postal Telegraph-Cable Company (Incorporated) transmits and delivers the within message subject to the following terms and conditions: To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the message on the face hereof and the Postal Telegraph-Cable Company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message, beyond the amount received for sending the same, nor for mistakes or for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination. Correctness in the transmission of messages to any point on the lines of the company can be insured by contract in writing, stating agreed amount of risk, and payment of premium thereon, at the following rates, in addition to the usual charge for repeated messages, viz.: One per cent for any distance not exceeding 1,000 miles, and 2 per cent for any greater distance. No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of this company's messengers, he acts for that purpose as the agent of the sender. Messages will be delivered free within the established free-delivery limits of the terminal office. For delivery at a greater distance a special charge will be

16—173

made to cover the cost of such delivery. This company shall not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission. This is an unrepeated message and is transmitted and delivered by request of the sender under the conditions named above. Errors can be guarded against only by repeating a message back to the sending station for comparison. The above terms and conditions shall be binding upon the receiver as well as the sender of this message. No employee of this company is authorized to vary the foregoing. The same being delivered to the defendant at its office in Chicago to be delivered to plaintiff at New Bern, N. C."

As delivered to plaintiffs in New Bern, the message read as follows:

J. A. MEADOWS,
New Bern, N. C.
Bot ten May corn 48 one-eighth.
GARDINER B. VANNESS."

There was evidence of the plaintiff tending to show the above stated facts, and also that plaintiffs bought the corn to fill an existing contract for the sale of meal, and that while they made a profit on the meal transaction, they lost on the corn by reason of defendant's error in negligently transmitting the message. Defendant introduced no evidence. A preliminary motion was made in the Superior Court to dismiss on two grounds, but as the opinion of the Court is with the defendant for another reason, this question is not considered.

The case originated in a justice's court and was carried by appeal to the Superior Court, where the jury, under the evidence and the instructions of the court, returned the following verdict for the plaintiff:

1. Did the defendant negligently fail to deliver the message sent to plaintiff by Gardiner B. Van Ness, as alleged in complaint? Answer: "Yes."

2. What damage, if any, is plaintiff entitled to recover? Answer: "$100."

Judgment for the plaintiff, and appeal by defendant.

Guion & Guion for plaintiff.
D. E. Henderson for defendant.

WALKER, J., after stating the case: Plaintiff introduced all the evidence showing the message and the contract as above stated.

This and other State courts have held that the stipulation as to repeating messages for a higher charge is one restricting the liability of the defendant for negligence, and is void, as being against public policy. *Lassiter v. Tel. Co.,* 89 N. C., 334; *Hendricks v. Tel. Co.,* 126 N. C., 304. Other courts, including the highest Federal court, hold that such stipulations are valid, 37 Cyc., 1684 *et seq.,* where the principal cases are collected in the notes. *Primrose v. Tel. Co.,* 154 U. S., 1 (38 L. Ed., 883). We have held that sender and sendee are both bound by the valid stipulations of the contract, as, for instance, the one prescribing the time for bringing suit for damages, limiting it to sixty days after receipt of the telegram or knowledge of its nondelivery. But since this Court and others have adjudged the stipulation, as to repeating messages, to be invalid, a radical change has been wrought in the control and management of carriers, telegraphs, and telephone companies doing an interstate business and traversing more than one of the States. Congress passed the Employers' Liability Act, which is applicable to interstate railroads, and thereby materially changed the principles upon which the liability of the employer to his employee, who is injured while at the time engaged in performing a duty in interstate commerce, is determined. *Fleming v. R. R.* 160 N. C., 196; *Lloyd v. R. R.,* 166 N. C., 24; *Tilghman v. R. R.,* 167 N. C., 163 (same case on writ of error, *S. A. L. Railway Co. v. Tilghman,* 237 U. S., 499) (59 L. Ed., 1069); *Railway Co. v. Renn,* 241 U. S. 290 (60 L. Ed., 1006); and although an action is brought by the employee in the State court, the rule as to liability created by the act of Congress is the applicable one in the trial of the case, except as to certain methods of practice and precedure (*Fleming's case, supra*) in the local court. By an amendment to the "Act to regulate Commerce," passed by Congress on 18 June, 1910, interstate telegraph and telephone companies were made subject to the rules and regulations of that act, in the particulars set forth by the amendment, and, as the courts who have since considered the question have held, Congress has occupied the entire field of interstate commerce, or traffic, with respect to such companies, and especially with reference to the transmission of messages from one State to another. The amendment of 1910 reads as follows: "All charges made for any service rendered or to be rendered in the transportation of passengers or property and for the transmission of messages by telegraph, telephone, or cable, as aforesaid, or in connection therewith, shall be just and reasonable; and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful: *Provided,* that messages by telegraph,

telephone, or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, Government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages."

Before the passage of the amendment of 1910 there had been no legislation by Congress affecting or conflicting with State statutes and other laws respecting the liability of telegraph companies for negligence in transmitting and delivering interstate messages, and therefore the local rule of law prevailed and was controlling in fixing such liability. *Tel. Co. v. James,* 162 U. S., 650 (40 L. Ed., 1105); *Commercial Milling Co. case,* 218 U. S., 406 (54 L. Ed., 1088); *Crovo case,* 220 U. S., 364 (55 L. Ed., 498).

A neighboring State court, in reviewing the above cases and others, adopts the language of the Court by which they were decided, and having final authority to declare the law upon the subject, and held, in substance, that where the State statute did not unfavorably affect or embarrass the telegraph company in the course of its employment, it would be held valid until Congress spoke on the subject. These decisions are based upon the fact that at the time they were rendered no congressional legislation existed on the subject. Such judicial utterances would mean nothing unless they meant that when Congress did act and undertake to regulate telegraph companies in the matter of the transmission and delivery of interstate messages the statutes of the State on the subject would be superseded by the action. "It would be inconvenient, as well as unnecessary, to recite the detailed provisions of the act of Congress approved 18 June, 1910. It is sufficient to say that by it Congress has occupied the field of regulation with respect to interstate telegrams, and hence the State statute imposing a penalty for failure to make prompt delivery can no longer be invoked in such cases. The act of Congress has ousted the State of jurisdiction over the subject." *Tel. Co. v. White,* 113 Va., 421; *W. U. Tel. Co. v. Bilisoly,* 82 S. E. (Va.), 91. The Virginia court was there dealing with a statute of that State imposing a penalty on the telegraph company for negligence in transmitting or delivering a message, though interstate in character, and held that since the amendment of 1910 was enacted by Congress, its former decisions in regard to the validity of that statute had no longer any force or effect as they conflicted with the provisions of the new law. They were not, of course, reversed, but merely displaced by the new rule adopted by Congress for the determination of cases arising under its recent amendment to the Commerce Act. And so we must say with reference to our own decisions, which equally conflict with the act of

Congress, as we have before said of those which had been rendered in cases before the Employers' Liability Act was passed, and which conflicted with it.

The Supreme Court of Maine has recently had this question under consideration. It had held in the *Ayer case* (79 Me:, 493) that the stipulation as to repeating messages was against public policy and void, and that a mere mistake in the transmission of the words of a message raised a presumption of negligence. Referring to the amendment of 1910 to the Interstate Commerce Act, the same court in a later case (*Haskell v. Postal Tel. Co.,* 114 Me., 219) said: "Many changes have occurred in business and business regulation in the twenty-eight years since the decision in the *Ayer case* and the creation of the Interstate Commerce Commission. The decision stands, but the Commerce Act has expanded until it comprehends and includes the questions involved in the case at bar, and, so including, it must perforce, being the supreme law, suspend the operation of any State statute or regulation, or the force and effect of any decision in opposition thereto, the *Ayer case* among the rest, so far as they conflict with the act of 18 June, 1910. The rule does no violence to any State, corporation, or individual, and is in keeping with the sentiment and reasons underlying sound public policy, the highest good, the best interest of all the people, not that of one State or one locality." The Court held that by the amendment of 1910 telegraph companies engaged in interstate business were subject now to the provisions of the Federal statute regulating commerce between the States, and that the State courts are bound to recognize the change in the law and to decide in accordance therewith; and, further, that it is especially their duty to follow the construction placed on the contracts of telegraph companies as to repeating messages and so forth which has been sanctioned by the highest of the Federal courts. In *Williams v. W. U. Tel. Co.,* 203 Fed. (Dist. of Col.), 140, the Court said: "It is apparent that the Interstate Commerce Act expressly recognizes the right of the telegraph company to charge for repeated messages different rates from those charged for unrepeated messages." The same Court, in *Tel. Co. v. Dant,* 42 App. (Dist. of Col.), 398, said in reference to the amendment of 1910: "Messages by telegraph, telephone, or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, Government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages. . . . By this act express authority is given for the different classifications of messages, and the charge of different rates for the dif-

ferent classes is also expressly authorized. Repeated and unrepeated messages were well known to the art, and, of course, it must be presumed that Congress intended the words to be given their ordinary meaning. Prior to the enactment of this statute, as we have seen, the court of last resort had ruled that, in the absence of State statutes to the contrary, it was competent for a telegraph company to make such classification of its messages. *Primrose v. Western Union Tel. Co.,* 154 U. S., 1 (14 Sup. Ct., 1098, 38 L. Ed., 883.) Congress, therefore, in express terms has sanctioned the practice theretofore existing."

This whole subject, with special reference to the act of 1910, amending the Interstate Commerce Law and bringing all interstate messages under the influence and control of Federal legislation, has most recently been fully considered and exhaustively discussed in the two cases of *W. U. Tel. Co. v. Bilisoly* (Va.), *supra,* and *Boyce v. W. U. Tel. Co.,* 89 S. E., 106; and in the former the Court held that the sendee, who had not paid for the message, could recover nothing for a mistake in it caused by negligence, as the message was not repeated, the requirement as to repeating messages and the classification of messages contained in the contract being reasonable, since Congress had legislated with reference thereto; and in the latter case it was held that the sender, for the same reason, could recover only the amount paid by him for the message. The Supreme Court of the United States had held before the passage of the amendment of 1910 that a contract such as the one under which this message was sent was reasonable and valid. *Primrose v. W. U. Tel. Co.,* 154 U. S., 1. As that decision has stated the governing rule in cases like this one, and must be followed by us, it will not be amiss to quote fully from it, so as to understand from the Court's own language the reasons which had led the Court to its conclusion that the contract is binding. The Court said: "In the earliest American case, decided by the Court of Appeals of Kentucky, the reasons for upholding the validity of a regulation very like that now in question were thus stated: 'The public are admonished by the notice that in order to guard against mistakes in the transmission of messages, every message of importance ought to be repeated. A person desiring to send a message is thus apprised that there may be a mistake in its transmission, to guard against which it is necessary that it should be repeated. He is also notified that if a mistake occur the company will not be responsible for it unless the message be repeated. There is nothing unreasonable in this condition. It gives the party sending the message the option to send it in such a manner as to hold the com-

pany responsible, or to send it for a less price at his own risk. If the message be important he may be willing to pay the cost of repeating the message. This regulation, considering the accidents to which the business is liable, is obviously just and reasonable. It does not exempt the company from responsibility, but only fixes the price of that responsibility, and allows the person who sends the message either to transmit it at his own risk at the usual price, or, by paying in addition thereto half the usual price, to have it repeated, and thus render the company liable for any mistake that may occur.' (*Camp v. Western Union Tel. Co.*, 1 Metc. (Ky.), 164, 168; 71 Am. Dec., 461.) . . . 'If the change of words in the message was owing to mistake or inattention of any of the defendant's servants, it would seem it must have consisted either in a want of plainness of the handwriting of Tindall, the operator who took it down at Brookville, or in a mistake of his fellow operator, Stevens, in reading that writing, or in transmitting it to Ellis, or else in a mistake of the operator at Ellis in taking down the message at that place. If the message had been repeated, the mistake, from whatever cause it arose, must have been detected by means of the differing versions made and kept at the offices at Ellis and Brookville. The conclusion is irresistible that if there was negligence on the part of any of the defendant's servants a jury would not have been warranted in finding that it was more than ordinary negligence, and that, upon principle and authority, the mistake was one for which the plaintiff, not having had the message repeated according to the terms printed upon the back thereof, and forming part of his contract with the company, could not recover more than the sum which he had paid for sending the single message. Any other conclusion would restrict the right of telegraph companies to regulate the amount of their liability within narrower limits than were allowed to common carriers in *Hart v. Pennsylvania R. R.* (112 U. S., 331).' " That case has been accepted by the subsequent decisions of the courts as settling, once for all time, the perplexing question, upon which so many courts had theretofore divided in opinion, whether such conditions and stipulations as are contained in the contract now being considered are reasonable and valid, so far, at least, as all cases coming within the purview and operation of Federal legislation are concerned. The Virginia Court, commenting on the *Primrose case,* said in *Boyce v. W. U. Tel. Co., supra:* "The conclusion of the Court in the foregoing case, that a stipulation such as that in the case at bar providing the company shall not be liable for mistakes in transmission or delivery beyond the sum received for sending it, unless the sender orders it to be repeated, is reasonable and valid,

and that the recovery cannot exceed the amount agreed upon in that stipulation, has been followed in numerous cases which need not be cited. . . . So that telegraph companies have here the direct authority and sanction of Congress to classify their messages into repeated and unrepeated messages, and to charge different rates for each; in other words, to enter into the very contract which was made in this case. . . . We are of opinion that the weight of authority and the better reason sustain the conclusion we have reached, that the defendant company is entitled to the protection afforded it by the stipulation in question, and is only liable to the plaintiff for the cost of transmitting the unrepeated message sent by him. The plaintiff further contends that the classification and stipulation of the company for interstate messages had never been submitted to the Interstate Commerce Commission nor in any wise authorized. It is sufficient to say that the act of Congress bringing telegraph companies under the regulation of the Interstate Commerce Commission does not require them to file their contract forms or tariffs with the Commission." The *Boyce case* is so well considered, and covers this entire field of inquiry so completely, that we content ourselves with referring to it especially for the reasons controlling our decision and also for any additional precedents.

While it is sufficient for our purpose that the highest court in the Federal jurisdiction has decided this question, upon a contract identical with ours, it may yet be well to state one of the reasons it gives in the *Primrose case* for its conclusion, and in its own language: "Even a common carrier of goods may, by special contract with the owner, restrict the sum for which he may be liable, even in case of a loss by the carrier's negligence; and this upon the distinct ground, as stated by *Mr. Justice Blatchford,* speaking for the whole Court, that 'Where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property, that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the liability and the freight he receives, and of protecting himself against extravagant and fanciful valuations.' *Hart v. Pennsylvania R. R.,* 112 U. S., 331, 343. By the regulation now in question, the telegraph company has not undertaken to wholly exempt itself from liability for negligence; but only to require the sender of the message to have it repeated, and to pay half as much again as the usual price in order to hold the company liable for mistakes or delays in transmitting or delivering, or for not delivering a message,

whether happening by negligence of its servants or otherwise." And referring to *Tyler v. W. U. Telegraph Co.*, 60 Ill., 439, and 74 Ill., 170, where such a provision was held invalid, the Court says: "The fallacy in that reasoning appears to us to be in the assumption that the company, under its admitted power to fix a reasonable rate of compensation, establishes the usual rate as the compensation for the duty of transmitting any message whatever. Whereas, what the company had done is to fix that rate for those messages only which are transmitted at the risk of the sender; and to require payment of the higher rate of half as much again if the company is to be liable for mistakes or delays in the transmission or delivery or in the nondelivery of a message."

It was held in *K. C. & C. Railway Co. v. Carl*, 227 U. S., 639, that the Carmack amendment brings contracts for interstate shipments under one uniform rule of law and withdraws them from State regulation, so that what is a reasonable rule or regulation of the carrier must be determined by the Federal law. To the same effect, *Wells, Fargo & Co. v Neiman-Marcus Co.*, ibid., 469; *Railway Co. v. Edwards, ibid.*, 265; *Adams Express Co. v. Croninger*, 226 U. S., 491; *Railway v. Miller, ibid.*, 513; *G. N. Railway Co. v. O'Connor*, 34 Sup. Ct. Rep., 380. The same was held with regard to the Hepburn Act. *Railway Co. v. Elevator Co.*, 225 U. S., 426; *Railway Co. v. Reid*, 222 U. S., 424; and also as to the Employers' Liability Act, which we have already shown, *Mondon v. R. R.*, 223 U. S., 1. As to the Hours of Service Law, *Railway Co. v. State of Washington*, 222 U. S., 370. As to penalties under State laws, *Railway Co. v. Lumber Co.*, 32 Sup. Ct. Rep., 657.

Defendant also raises the question whether, as the message is in cipher or is obscure, there can be any recovery of damages, but we need not decide the point, as it is not necessary that we should do so.

We are of the opinion, following the decision of the highest Federal Court upon the question involved (*Primrose case, supra*), that the court should have granted the nonsuit, as plaintiff is not entitled to recover by reason of the fact that Congress has taken possession of the entire field of interstate commerce so far as it affects telegraph companies in their interstate business. Having declared upon a contract, with the terms of which there has been no compliance, he cannot recover. *Tel. Co. v. Bilisoly, supra; Lewis v. Tel. Co.*, 117 N. C., 436. It follows that there was error in not so judging.

Reversed.