ATLANTIC COAST LINE RAILROAD COMPANY *v.*
MAZURSKY.

SOUTHERN EXPRESS COMPANY *v.* McTEER.

ATLANTIC COAST LINE RAILROAD COMPANY *v.*
CHARLES.

SAME *v.* VON LEHE.

SAME *v.* SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH
CAROLINA.

Nos. 58, 59, 60, 61, 62. Argued December 9, 1909.—Decided
February 21, 1910.

A state statute that requires a carrier to settle, within a specified time,
claims for loss of or damage to freight while in its possession within
that State, is not, in the absence of legislation by Congress on the
subject, an unwarrantable interference with interstate commerce;
and so held that Act No. 50 of South Carolina of February 23, 1903,
to that effect is not unconstitutional under the commerce law as to
goods shipped from without the State but which actually are in the
possession of the carrier within the State.

A state statute in aid of the performance of the duty of an inter-
state carrier which would exist in the absence of the statute, which
does not obstruct the carrier, and which relates to the delivery of
goods actually in the carrier's possession within the State, is not
void as a regulation or obstruction to interstate commerce, in the
absence of congressional legislation on the subject.

78 So. Car. 36, affirmed.

By the act of the General Assembly of the State of South
Carolina, entitled "An Act to Regulate the Manner in which
Common Carriers doing Business in this State shall Adjust
Freight Charges and Claims for Loss of or Damage to Freight,"
approved February 23, 1903 (No. 50, Acts of S. C. 1903, p. 81),
it was enacted:

"SECTION 1. *Be it enacted* by the General Assembly of the State of South Carolina, That from and after the passage of this act, all common carriers doing business in this State shall settle their freight charges according to the rate stipulated in the bill of lading: *Provided,* The rate therein stipulated be in conformity with the classifications and rates made and filed with the Interstate Commerce Commission, in case of shipments from without this State, and with those of the Railroad Commissioners of this State, in case of shipments wholly within this State; by which classifications and rates all consignees shall in all cases be entitled to settle freight charges with such carriers; and it shall be the duty of such common carrier to inform any consignee or consignees of the correct amount due for freight, according to such classifications and rates; and upon payment or tender of the amount due on any shipment, or on any part of any shipment, which has arrived at its destination, according to such classifications or rates, such common carrier shall deliver the freight in question to the consignee or consignees, and any failure or refusal to comply with the provisions hereof shall subject each such carrier so failing or refusing to a penalty of fifty dollars for each such failure or refusal, to be recovered by any consignee or consignees aggrieved by suit in any court of competent jurisdiction.

"SEC. 2. That every claim for loss of or damage to property while in the possession of such common carrier shall be adjusted and paid within forty days, in case of shipments wholly within this State, and within ninety days, in case of shipments from without this State, after the filing of such claim with the agent of such carrier at the point of destination of such shipment: *Provided,* That no such claim shall be filed until after the arrival of the shipment or of some part thereof at the point of destination, or until after the lapse of a reasonable time for the arrival thereof. In every case such common carrier shall be liable for the amount of such loss or damage, together with interest thereon from the date of the filing of the claim therefor

until the payment thereof. Failure to adjust and pay such claim within the periods respectively herein prescribed shall subject each common carrier so failing to a penalty of fifty dollars for each and every such failure, to be recovered by any consignee or consignees aggrieved in any court of competent jurisdiction: *Provided,* That unless such consignee or consignees recover in such action the full amount claimed, no penalty shall be recovered, but only the actual amount of the loss or damage, with interest as aforesaid: *Provided, further,* That no common carrier shall be liable under this act for property which never came into its possession, if it complies with the provisions of section 1710, vol. 1, of the Code of Laws of South Carolina, 1902."

Section 1710, volume 1, page 661 of the Code of Laws of South Carolina, 1902, is as follows:

"When under contract for shipment of freight or express over two or more common carriers, the responsibility of each or any of them shall cease upon delivery to the connecting line 'in good order,' and if such freight or express has been lost, damaged, or destroyed, it shall be the duty of the initial, delivering or terminal road, upon notice of such loss, damage or destruction being given to it by the shippers, consignee, or their assigns, to adjust such loss or damage with the owners of said goods within forty days, and upon failure to discharge such duty within forty days after such notice, or to trace such freight or express, and inform the said party so notifying when, where and by which carrier the said freight or express was lost, damaged or destroyed, within said forty days, then said carrier shall be liable for all such loss, damage or destruction in the same manner and to the same extent as if such loss, damage or destruction occurred on its lines: *Provided,* That if such initial, terminal or delivering road can prove that, by the exercise of due diligence, it has been unable to trace the line upon which such loss, damage or destruction occurred, it shall thereupon be excused from liability under this section."

The above-entitled cases were brought to test the validity of

the provisions of § 2 of the act of February 23, 1903, when applied to claims for loss or damage to interstate freight.

In each case the objection that that section was unconstitutional and invalid was seasonably made. In each case the objection was overruled and judgment given in favor of the respective claimants, plaintiffs, for the value of the undelivered freight, with the full penalty of fifty dollars added.

The opinion of the Supreme Court of South Carolina construing and applying the provisions of the state statute appears in the printed transcript of the record in case No. 60, *Atlantic Coast Line Railroad Company* v. *Charles*, 78 S. C. 36. In each of the other cases the principles assumed to have been settled in and by that opinion were made the basis of the judgment of the state Supreme Court.

The cases were submitted to this court December 9, 1909, as one case, and argued as such on one side only. On the twentieth of December this court entered an order that notice of the pendency of these cases should be given to the Attorney General of South Carolina, and leave was given to him to file a brief as *amicus curiæ* on or before the third day of January, if he should be so advised. The Attorney General filed a brief accordingly January 3, 1910. Townsend was with him on the brief.

*Mr. Frederic D. McKenney*, with whom *Mr. P. A. Willcox, Mr. F. L. Willcox* and *Mr. Henry E. Davis* were on the brief, for plaintiff in error:

*Seaboard Air Line* v. *Seegers*, 207 U. S. 73, sustained the statute of South Carolina involved in this case only as to a shipment wholly intrastate; the act as to interstate shipments, as in these cases, is unconstitutional under Art. I, § 8, cl. 3 of the Federal Constitution. The power of Congress over such shipments is complete. *Covington Bridge Co.* v. *Kentucky*, 154 U. S. 204, 209.

The statute does not fall within the test of a reasonable exercise of the police power, but constitutes a burden on inter-

state commerce. *Henderson* v. *New York*, 92 U. S. 259; *Minnesota* v. *Barber*, 136 U. S. 313; *McNeill* v. *Southern R. R.*, 202 U. S. 543; *Central Stock Yards* v. *L. & N. Railway*, 118 Fed. Rep. 113; *Gulf Railway* v. *Ellis*, 165 U. S. 150; *Atchison Railroad* v. *Matthews*, 174 U. S. 96; see also *Central of Georgia* v. *Murphey*, 196 U. S. 194, which involved a similar statute of Georgia; *Houston & Tex. Cent. R. R. Co.* v. *Mayes*, 201 U. S. 321.

Under this statute, as construed by the Supreme Court of South Carolina, a common carrier may be penalized for its failure to adjust a claim for damages growing out of injury to an interstate shipment if such injury occurs on its line, even though in another State than South Carolina. *Seegers* v. *Seaboard Air Line R. Co.*, 73 S. C. 71.

If it be true, as held by the Supreme Court of South Carolina, that the investigation and adjustment of claims is but an incident of interstate transportation, it follows that the regulations of such claims adjustment should properly be prescribed by Congress, and that the States are powerless to provide for such regulation.

Congress has legislated extensively in the field of interstate commerce, its enactments command the performance of a great variety of duties as well as prohibit many practices and customs heretofore indulged in by common carriers in the prosecution of interstate commerce. The failure of Congress to legislate with respect to the period within which claims such as those contemplated by the South Carolina statute should be adjusted, would seem to be tantamount to a declaration that the matter of such adjustments should be left free from restrictive regulations.

Payment of a claim connected with the interstate transportation of goods, before it has been developed by proper investigation to be legitimate and in good conscience payable, might be made to border on the ancient practice of rebating, which has been severely condemned by Federal laws. See *Union Pac. Co.* v. *Goodridge*, 149 U. S. 680. The Interstate Com-

merce Commission has recently so ruled. It may result, therefore, that under the South Carolina statute a carrier can and may be penalized for failing to settle within ninety days, a claim which properly takes a single day longer to investigate.

Under such conditions would not the Interstate Commerce Commission have authority to proceed against it for derelictions under the provisions of Federal law relating to undue preferences? It is not possible in such matters, pertaining, as they do, to interstate commerce, for both the United States and the States to occupy the same field.

Since the decision in *Seaboard Air Line Co.* v. *Seegers,* 207 U. S. 73, South Carolina by act of February 26, 1908, 25 Stats. S. C. 1077, has amended the statute here under consideration by making it apply to both "property and baggage," and by reducing the periods of time allowed for the adjustment and payment of claims for loss or damage thereto from forty to thirty days in cases of shipments wholly within the State, and from ninety to forty days in cases of shipments without the State.

*Mr. J. P. Kennedy Bryan* submitted a brief on behalf of the Clyde Steamship Company, Manchester Lines, Limited, and other ocean carriers:

The statute is unconstitutional as a burden on interstate commerce.

The power of Congress to regulate commerce among the States is exclusive. *Brown* v. *Maryland,* 12 Wheat. 419, 446; *Cook* v. *Pennsylvania,* 97 U. S. 574. Interstate transportation is interstate commerce. *State Freight Tax Case,* 15 Wall. 275; *United States* v. *Freight Association,* 166 U. S. 312.

The clear intention of the Constitution was to confer the power to regulate interstate commerce exclusively upon Congress, and not to divide the power between the state legislatures and Congress. One of the chief objects of the Constitution was to rid commerce of the conflicting, vexatious and burdensome restrictions which, under the articles of con-

federation, had been imposed by the various States. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Passenger Cases*, 7 How. 383; *State Freight Tax Case*, 15 Wall. 279; *Hall* v. *DeCuir*, 95 U. S. 485; *Wabash R. R. Co.* v. *Illinois*, 118 U. S. 557; *Pickard* v. *Pullman Co.*, 117 U. S. 34, 46; *Fargo* v. *Michigan*, 121 U. S. 238; *Leloup* v. *Mobile*, 127 U. S. 640; *Almy* v. *California*, 24 How. 169; *Woodruff* v. *Parham*, 8 Wall. 123; *American Express Co.* v. *Iowa*, 196 U. S. 133.

The particular matter sought to be regulated by the South Carolina statute is in no sense local, but is national in character and importance, and obviously admits of national regulation. From the first, certain state laws relating to pilotage, quarantine, etc., were sustained notwithstanding an incidental effect upon interstate and foreign commerce. *Hall* v. *DeCuir*, 95 U. S. 485, 487; *Cooley* v. *Board of Wardens*, 12 How. 299; *Covington Bridge Co.* v. *Kentucky*, 154 U. S. 204, 209. See also *Wilton* v. *State*, 91 U. S. 275; *Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *County of Mobile* v. *Kimball*, 102 U. S. 691; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Brown* v. *Houston*, 114 U. S. 622; *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S. 326; *Louisville & Nashville Ry.* v. *Eubank*, 184 U. S. 27; *Illinois Central Ry.* v. *Illinois*, 163 U. S. 142; *Cleveland &c. Ry.* v. *Illinois*, 177 U. S. 514.

If the State ever possessed such power, it was only until Congress should act, and Congress having assumed it, the State is no longer entitled to exercise it. Since Congress has acted and has provided a system of laws regulating railroads and steamships as instruments of interstate and foreign commerce in great detail, it has excluded the power of the States to act upon the subject. *Bowman* v. *Chicago &c. Ry.*, 125 U. S. 465; *Sinnot* v. *Davenport*, 22 How. 227.

The attempted defense of state legislation in violation of the Federal Constitution, that it is within the police power, is untenable in this case. *Railroad Co.* v. *Husen*, 95 U. S. 465; *License Cases*, 5 How. 504, 599; *Chy Lung* v. *Freeman*, 92 U. S. 275; *Robbins* v. *Shelby County*, 120 U. S. 489.

The South Carolina statute as applied in this case plainly regulates interstate commerce, and is therefore void. *Telegraph Co.* v. *Pendleton*, 122 U. S. 347, 358; *Railway Co.* v. *Murphey*, 196 U. S. 194; *Railway Co.* v. *Mayes*, 201 U. S. 331; *Express Co.* v. *Iowa*, 196 U. S. 133; *Railway Co.* v. *Wharton*, 207 U. S. 328; *Express Co.* v. *Kentucky*, 206 U. S. 129.

*Mr. J. Fraser Lyon*, Attorney General of the State of South Carolina, with whom was *Mr. W. H. Townsend*, submitted, at the suggestion of the court, a brief in support of the constitutionality of the statute involved as applied in these cases.

There was no appearance or briefs filed for any of the defendants in error.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

In No. 60, *Atlantic Coast Line R. R. Co.* v. *Charles*, which was assumed by the Supreme Court of South Carolina to settle all the others and to have been made the basis for the judgment of that court in all the cases, the state court found, as matter of fact, "the evidence showed that defendant was in possession of the goods lost," and held as matter of law "that the statute in question, as it affects carriers doing business in this State who fail and refuse to adjust and pay the loss of or damage to goods while in their possession, is no unlawful interference with interstate commerce, even as applied to an interstate shipment."

It is thus apparent that the statute is construed by the court as only concerning property lost or damaged while in the possession of a carrier in the State of South Carolina.

It is this conclusion of law that the plaintiff in error asks this court to review.

In *Venning* v. *Atlantic Coast Line R. R. Co.*, 78 S. C. 42, 55, it was expressly decided that the act did not apply to claims

· for loss of property which never came into the possession of the defendant. In that case the state Supreme Court considered an act of May, 1903, and held it, for the reason given, to be unconstitutional, not as obnoxious to the Fourteenth Amendment of the Constitution of the United States and the constitution of South Carolina, but as amounting to an illegal attempt to regulate interstate commerce. And that "on principle, as well as under the authority of *Central R. R. Co.* v. *Murphey*, 196 U. S. 194, it is impossible to avoid the conclusion that the act of May, 1903, here under consideration, is unconstitutional." And further, that it was evident from the complaint that the action was intended to rest on the invalidity under the act of May, 1903, of such a contract as § 1710 contemplates, and that therefore that section could have no application.

· The court then considered the act of February 23, 1903, and said (78 S. C. 55):

"The section of main importance here is the second, which provides for the recovery for loss of or damage to freight; and penalties for failure to adjust and pay such loss or damage within a certain time. The question vital to this case is whether the statute can be construed to impose upon one connecting carrier, liability for the default of another, unless such carrier obtains and gives the information, or uses due diligence to obtain it, as provided in § 1710 of the Civil Code. We do not think it can be so construed.

"The main enactment as to the recovery of damages and penalties thus begins in section 2: 'That every claim for loss of or damage to property *while in the possession of such common carrier* shall be adjusted and paid within forty days,' &c. The words we have italicized clearly limit the loss and damage which a carrier is required to adjust and pay for to that which befalls while the goods are in the possession of such carrier, and excludes the idea of liability for loss or damage to the goods while in the possession of another carrier.

"It is true there is a proviso at the end of this section 'that

no common carrier shall be liable under this act for property which never came into its possession, if it complies with the provisions of section 1710, vol. I, of the Code of Laws of South Carolina, 1902.' But as the body of the act does not make the carrier liable at all 'for goods which never came into its possession;' a *proviso* which exempts from liability for loss of or damage to such goods on certain conditions can have no effect. The act imposes no liability to which the exemption can be applied.

"The rule is that all parts of a statute, including *provisos*, are to be construed together, and effect given if possible to all. But it is contrary to reason as well as authority to *extend by implication a proviso* to cover that which is opposed to the express language of the main enactment. *Southgate* v. *Goldthwaite*, 1 Bail. 367; *United States* v. *Dickson*, 15 Pet. 141; *The Irresistible*, 7 Wheat. 551; 26 Am. & Eng. Enc. 681; Endlich on Statutes, secs. 184, 185. The fact that the statute is penal adds force to this conclusion. We are of the opinion that the *proviso* of section 2 has no effect, and the act only imposes penalties upon the carrier for failing to adjust claims for loss occurring while the goods are in its own possession.

"It follows, the plaintiff in this case cannot sustain his recovery on the ground that the defendant was liable under the act of February, 1903, for goods lost by a connecting carrier, because it failed to obtain and give information of the kind required in cases falling under that act, or to use due diligence to obtain such information.

"The penalty act of February will apply to the case, if the finding on the new trial should be, that the loss occurred on the defendant's road, but not otherwise. It is attacked as unconstitutional under the interstate commerce clause of the Constitution of the United States. That question is discussed and decided against the defendant's contention in *Charles* v. *A. C. L. R. R. Co., ante*, 36."

In *Charles* v. *Railroad Company*, 78 S. C. 36, the action was brought in a magistrate's court to recover the value of four

sacks of rice, alleged to have been shipped from New Orleans, Louisiana, by Martin J. Wynne to the plaintiff at Timmonsville, South Carolina. and to have been lost while in the possession of the defendant carrier, and also to recover fifty dollars' penalty for failure to adjust and pay the claim within ninety days, as prescribed by the act of February 23, 1903. The magistrate gave judgment against defendant for the amount claimed, and that judgment, on appeal, was affirmed by the Circuit Court, and then again by the Supreme Court of the State in this case. The Supreme Court held that the last proviso of the second section of the act of February, 1903, had no application to carriers into whose possession the goods had come, and referred to the opinion of the court in *Seegers* v. *Railway*, 73 S. C. 71, 73, where it was said: "The duty to make prompt settlement for loss or damage to goods is but an incident of the duty to transport and deliver safely and with reasonable diligence. The statute in question was designed to effectuate an important public purpose, viz., to compel the common carrier to perform with reasonable diligence the duty which peculiarly appertains to his business as a carrier of freight. The penalty is but a means to that end." And see same case, 207 U. S. 73.

The Supreme Court, after making that quotation, thus proceeded (78 S. C. 41):

"While it is not easy to define the exact limits of the operation of state laws as affecting interstate commerce, we have no hesitation in saying that the statute in question, as it affects carriers doing business in this State, who fail or refuse to adjust and pay the loss of or damage to goods while in their possession, is no unlawful interference with interstate commerce, even as applied to an interstate shipment. The penalty imposed is for a delict of duty appertaining to the business of a common carrier, and in so far as it may affect interstate commerce, it is an aid thereto by its tendency to promote safe and prompt delivery of goods, or its legal equivalent—prompt settlement of proper claim for damages. No penalty can at-

tach except upon the establishment in a court of a default of duty imposed by statute. The statute does not attempt to regulate interstate commerce and imposes no tax or burden thereon. It is supported by the general principle declared in *Sherlock* v. *Alling,* 93 U. S. 89, 104, and enforced in *Smith* v. *Alabama,* 124 U. S. 465, and *Nashville &c. R. R.* v. *Alabama,* 128 U. S. 96, that state legislation 'relating to the rights, duties and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce is of obligatory force upon citizens within the territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or interstate, or in any other pursuit.'"

In the case of *Western Union Telegraph Co.* v. *James,* 162 U. S. 650, a statute of Georgia requiring telegraph companies to transmit and deliver dispatches with impartiality, good faith and diligence, under penalty of $100 in each case, in the absence of legislation by Congress on the subject, was held not to be an unwarrantable interference with interstate commerce as to messages without the State, and Mr. Justice Peckham, delivering the opinion of the court, said, p. 660:

"The statute in question is of a nature that is in aid of the performance of a duty of the company that would exist in the absence of any such statute, and it is in nowise obstructive of its duty as a telegraph company. It imposes a penalty for the purpose of enforcing this general duty of the company. The direction that the delivery of the message shall be made with impartiality and in good faith and with due diligence is not an addition to the duty which it would owe in the absence of such a statute. Can it be said that the imposition of a penalty for the violation of a duty which the company owed by the general law of the land is a regulation of or an obstruction to interstate commerce within the meaning of that clause of the Federal Constitution under discussion? We think not."

And see *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Solan,* 169 U. S. 133, 137; *Pennsylvania R. R. Co.* v. *Hughes,* 191 U. S. 477, 491; *Missouri Pacific Ry. Co.* v. *Larabee Flour Mills Co.,*

211 U. S. 612, 624. The present cases fall within the rules there laid down, and *Central of Georgia Ry. Co.* v. *Murphey,* 196 U. S. 194; *Houston & Texas Central R. R. Co.* v. *Mayes,* 201 U. S. 321; and *McNeill* v. *Southern Ry. Co.,* 202 U. S. 543, cited to the contrary, are really not in conflict therewith.

*Judgments affirmed.*