WESTERN UNION TELEGRAPH COMPANY *v.* BOEGLI.

[No. 22,664.    Filed April 17, 1917.    Rehearing denied March 12, 1918.]

1.  TELEGRAPHS AND TELEPHONES.—*Pleading.*—*General Denial.*— In an action against a telegraph company for the recovery of a penalty under §§5780, 5781 Burns 1914, Acts 1885 p. 151, for failure to deliver a telegram with impartiality and good faith, facts showing diligence of the defendant in its attempt to deliver the telegram were provable under the general denial of the negligence alleged in the complaint. p. 239.

2.  TELEGRAPHS AND TELEPHONES.—*Negligence in Delivery of Message.*—*Action for Penalty.*—*Right of Action.*—In an action against a telegraph company for the recovery of a penalty under §§5780, 5781 Burns 1914, Acts 1885 p. 151, which provides for the transmission of messages "upon the usual terms," the fact that a message was not prepaid is insufficient to defeat the action, as the defendant was bound by its election to waive its right to payment in advance.   p. 241.

3.  TELEGRAPHS AND TELEPHONES.—*Negligence in Delivery of Message.*—*Action for Penalty.*—Although only the sender of an interstate message is entitled to recover the statutory penalty for negligence in the delivery of a telegram, and the penalty cannot be collected in such case if the telegram was deposited with the company in another state for delivery in this state, where a message was deposited by the plaintiff through his authorized agent in Chicago for transmission to plaintiff through his agent in Indiana, the plaintiff was the party "aggrieved" by the negligence in the delivery of the message within the contemplation of §§5780, 5781 Burns 1914, Acts 1885 p. 151, and was entitled to recover the penalty, since he was the undisclosed principal to the contract for transmission and therefore both sender and receiver of the message. p. 242.

4.  COMMERCE.—*Interstate Telegraph Messages.*—*State Statute.* —The mere grant by Congress to the Interstate Commerce Commission of certain national powers in respect to interstate

commerce does not of itself and in the absence of action by the commission interefere with the authority of the state to make regulations conducive to the welfare and convenience of its citizens, and until specific action by Congress or the commission the state's control over incidental matters remains undisturbed.  p. 243.

5.   COMMERCE.—*Interstate Telegraph Messages.—State Statute.* —The amendment of June 18, 1910, to the Interstate Commerce Act, making telegraph companies doing an interstate business subject to the provisions of the act, §10 (§8574 U. S. Comp. Stat. 1916) of which provides a penalty for the wilful violation of its provisions, does not render inoperative §§5780, 5781 Burns 1914, Acts 1885 p. 151, since §10 prevents a construction of the amendment of 1910 to include negligence by specifically providing a penalty for conduct that is the result of deliberation and intention, while the Indiana statute provides a penalty for negligent, as well as wilful, conduct in the delivery of messages.  pp. 247, 252.

From Allen Circuit Court; *J. W. Eggeman,* Judge.

Action by Peter Boegli against the Western Union Telegraph Company.  From a judgment for plaintiff, the defendant appeals.  *Affirmed.*

*Barrett, Morris & Hoffman, Pickens, Moores, Davidson & Pickens* and *George H. Fearons,* for appellant.

*Arthur W. Parry,* for appellee.

HARVEY, J.—Appellee sued appellant for the recovery of a penalty provided by statute of Indiana, in §§5780, 5781 Burns 1914, Acts 1885 p. 151, for failure to deliver a telegram "with impartiality and good faith, and in the order of time in which it was received."  Appellant also filed a second paragraph of complaint seeking to recover special damages; but this paragraph was dismissed before the trial.

A demurrer was overruled to the first paragraph of complaint.  The defendant answered in three paragraphs; a demurrer was sustained to the second and third.  All the matters set up in the second regarding diligence in effort to deliver were provable under the general denial of negligence

charged in the complaint. The third paragraph of answer alleges that Congress, by the act of June, 1910, had severed interstate communications from state regulation, and had conferred upon the Interstate Commerce Commission power over the same.

The facts out of which this controversy grew are, in short, that the appellee was a party to litigation pending in Chicago; that he was represented by his attorney at Chicago and by his attorney at Fort Wayne. On the day preceding that on which said cause in Chicago was to be tried, plaintiff's attorney in Chicago sent "collect" to plaintiff's attorney in Fort Wayne a dispatch in the following words:

"Have Boegli and other witnesses at our office at eight a. m. Thursday."

. This telegram was received by appellant's office in Fort Wayne about five o'clock p. m. on the day on which it was delivered to appellant, and during appellant's office hours, but because the attorney in Fort Wayne was not in his office until about 8:30 o'clock next morning, said telegram was not delivered until that hour, although said attorney was at his home in Fort Wayne during all of the time between the receipt of the telegram and the delivery, and said attorney's address was given in the Fort Wayne city directory and in the telephone directory, and his home was connected by telephone.

The points made here are: (1) The penalty in this case cannot be recovered because the message was not prepaid. (2) The penalty cannot be recovered because the contract for the transmission of the message was made out of this state. (3) Only the sender of a message can recover the penalty. (4) In the act of Congress of June 18, 1910 (1 Fed. Stat. Ann. Supp. [1912] 111-117, §§8563, 8566, 8569, 8574 U. S. Comp. Stat.

1916), telegraph companies doing an interstate commerce business are declared common carriers, and have been placed wholly under the supervision of the Interstate Commerce Commission, and subject to the same rules, regulations, restrictions and penalties that are imposed on other common carriers, and that therefore the Indiana statute is superseded.

The telegram here involved was accepted by appellant in Chicago under an arrangement that the charge therefor should be collected in Fort Wayne, and the

2.   charge is shown to have been paid within two or three days after the receipt of the message. The court held in *Western Union Tel. Co.* v. *Henley* (1901), 157 Ind. 90, 60 N. E. 682, that: "Appellant (telegraph company) had the right to exact cash in advance,—and also had the right to waive it. If appellant elected to accept business on credit, there arose the same duties that follow cash payment."

Appellant cites upon this proposition *Western Union Tel. Co.* v. *Mossler* (1884), 95 Ind. 29. This decision involved a contract made when the statute provided that the company shall "on payment or tender of the usual charges, according to the regulations of the company, transmit," etc. The telegram in that case was sent "collect." It was held that, as the sender "accepted the company's waiver of payment in advance," he "therefore waived the statutory penalty." The statute referred to in said decision was amended in 1885. The amendatory statute, which continues in force, omitted the words above quoted, and provided for transmission "upon the usual terms" and the ruling in the Henley case was based upon the statute as so amended, and governs the decision in this case.

Proposition Nos. 2 and 3 can be fairly considered together. It has been held that the penalty cannot be

collected because of the negligence of the tele-
3. graph company in the delivery of a message de-
posited with the company in another state
for transmission to a point in this state. *Carnahan*
v. *Western Union Tel. Co.* (1883), 89 Ind. 526, 46 Am.
Rep. 175. It is further held that only the sender of
such an interstate message is entitled to recover the
statutory penalty. *Western Union Tel. Co.* v. *Reed*
(1884), 96 Ind. 195; *Western Union Tel. Co.* v. *Pendle-
ton* (1884), 95 Ind. 12, 48 Am. Rep. 692, reversed on
another point in 122 U. S. 347, 7 Sup. Ct. 1126, 30 L.
Ed. 1187; *Hadley* v. *Western Union Tel. Co.* (1888), 115
Ind. 191, 15 N. E. 845. If the holdings above referred
to apply to the facts in this case, this case is thereby de-
cided in favor of the appellant. The ruling last above
stated, however, is based upon the further ruling that
the right to recover the penalty depends upon the exist-
ence of a contract for the transmission and upon privity
of contract in the plaintiff, and is to the effect that only
the sender is a party to such contract.

It is held that an undisclosed principal in whose in-
terest a contract is made for the transmission of a tele-
gram may recover the penalty. *Western Union Tel. Co.*
v. *Troth* (1908), 43 Ind. App. 7, 84 N. E. 727, and
cases cited. See, also, discussion in *Milliken* v. *Western
Union Tel. Co.* (1888), 110 N. Y. 403, 18 N. E. 251, 1
L. R. A. 281; *Western Union Tel. Co.* v. *Schriver* (1905),
141 Fed. 538, 72 C. C. A. 596, 4 L. R. A. (N. S.) 686.
The facts disclose that the contract for this message
was made by plaintiff through plaintiff's agent in Chi-
cago for the transmission to plaintiff, through plain-
tiff's agent in Indiana, of the message in a matter con-
nected with such agency, and for the sole use and bene-
fit of the plaintiff. The paramount feature of the exe-
cution of said contract by appellant, for the benefit of
said undisclosed principal, was the proper and diligent

delivery in Indiana of said telegram. The plaintiff was therefore the sender and the receiver and the contractor for delivery of said dispatch, and, within the contemplation of the statute, is the party "aggrieved," who, according to the statute, is entitled to recover the penalty.

We have not been referred to, nor have we found, a decision in the Indiana reports expressly deciding that the receiver who is also the sender of an interstate dispatch may recover; but we believe that to so hold is right, in view of the legal principle involved, and this holding is supported by a clear inference from cases somewhat similar. *Western Union Tel. Co.* v. *Kinney* (1886), 106 Ind. 468, 7 N. E. 191; *Western Union Tel. Co.* v. *Fenton* (1875), 52 Ind. 1.

This leads us to the conclusion that appellee is entitled to recover the statutory penalty, unless Congress has by enactment, or the Interstate Commerce Commission has by regulation, made under the power granted to the commission by Congress, so specifically regulated the delivery of interstate telegraphic messages as to exclude the power of the state to enforce its statute on the same subject.

There is no showing in the record in this case that the Interstate Commerce Commission has made any regulation affecting the delivery of telegrams.

4. Appellant does not so claim in its brief. The mere granting by Congress to such commission of the power to do so is not sufficient to exclude the operation of a state statute. As to this the Supreme Court of the United States, in *Southern R. Co.* v. *Reed* (1911), 222 U. S. 424, 436, 32 Sup. Ct. 140, 142, 56 L. Ed. 257, said: "The mere creation of the Interstate Commerce Commission and the grant to it of a large measure of control over interstate commerce does not, in the absence of action by it, change the rule that

Congress by nonaction leaves power in the states over merely incidental matters. 'In other words, * * * the mere grant by Congress to the commission of certain national powers in respect to interstate commerce does not of itself and in the absence of action by the commission interfere with the authority of the state to make those regulations conducive to the welfare and convenience of its citizens. Until specific action by Congress or the commission the control of the state over those incidental matters remains undisturbed.'" See, also, *Missouri Pacific R. Co.* v. *Larabee Flour Mills Co.* (1908), 211 U. S. 612, 29 Sup. Ct. 214, 53 L. Ed. 352.

We are therefore called upon to consider only whether Congress has passed an act directly superseding the power of the state. Neither the commerce clause of the United States Constitution, nor the fact that Congress has power to make provisions regulating interstate common carriers, including telegraph companies, renders invalid a state statute regulating the delivery of interstate telegrams until Congress has acted, and by such action covered the specific matter governed by the state statute. *Pittsburgh, etc., R. Co.* v. *State* (1908), 172 Ind. 147, 87 N. E. 1034. The opinion of this court in the above cause was adopted by the Supreme Court of the United States in its general order of affirmance. See 223 U. S. 713, 32 Sup. Ct. 520, 56 L. Ed. 626. The opinion held valid what is commonly known as the "full crew act" of this state, and, among other things, says of the act: "It may be permitted to stand until Congress sees fit to enter the field and actually legislate upon the precise subject-matter, in which event the statute in question would have to yield."

In the case last above cited, in making a comparison between the Indiana "full crew act" and regulations by Congress relating to interstate trains, the court announced rules which are applicable here in a like com-

parison. The court said: "Appellant's counsel argue that Congress has already entered the field of legislation for the safety of employes and passengers on interstate trains, and the fact that Congress has not seen fit to prescribe any specific rules in regard to the number of men required to operate interstate trains does not affect the question. In support of this claim we are referred to the acts of Congress requiring the cars of interstate trains to be equipped with automatic couplers, and other acts mentioned and set up by counsel, as hereinbefore stated. This argument, however, has been rejected by the Supreme Court of the United States." (Citing decisions.) The court further says, on said subject, that such state regulations "'are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and liability of those engaged in such commerce. So long as Congress has not legislated on the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the state to regulate the relative rights and duties of all persons and corporations within its limits.'" *Western Union Tel. Co.* v. *Crovo* (1910), 220 U. S. 364, 31 Sup. Ct. 399, 55 L. Ed. 498. See, also, *Vandalia R. Co.* v. *Public Service Commission* (1916), 242 U. S. 255, 37 Sup. Ct. 93, 61 L. Ed. 276, affirming 182 Ind. 382, 101 N. E. 85.

In its opinion in *Western Union Tel. Co.* v. *James* (1895), 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105, which was an action for recovery of a penalty for failure to deliver a telegram in the State of Georgia, which had been deposited in another state for such transmission to Georgia, the Supreme Court of the United States, referring to the Georgia statute, said: "In one sense it affects the transmission of interstate messages, because such transmission is not completed until the message is delivered to the person to whom it is addressed,

or reasonable, diligence employed to deliver it. But the statute can be fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other states. It would not unfavorably affect or embarrass it in the course of its employment, and hence until Congress speaks upon the subject it would seem that such a statute must be valid. It is the duty of a telegraph company which receives a message for transmission, directed to an individual at one of its stations, to deliver that message to the person to whom it is addressed, with reasonable diligence and in good faith. That is a part of its contract, implied by taking the message and receiving payment therefor.

"The statute in question is of a nature that is in aid of the performance of a duty of the company that would exist in the absence of any such statute, and is in nowise obstructive of its duty as a telegraph company. It imposes a penalty for the purpose of enforcing this general duty of the company. The direction that the delivery of the message shall be made with impartiality and in good faith and with due diligence is not an addition to the duty which it would owe in the absence of such a statute. Can it be said that the imposition of a penalty for the violation of a duty which the company owed by the general law of the land is a regulation of or an obstruction to interstate commerce within the meaning of that clause of the Federal Constitution under discussion? We think not." See, also, *Chicago, etc., R. Co.* v. *Arkansas* (1910), 219 U. S. 453, 460, 31 Sup. Ct. 275, 55 L. Ed. 290; *Atlantic, etc., R. Co.* v. *Mazursky* (1909), 216 U. S. 122, 30 Sup. Ct. 378, 54 L. Ed. 411; *Western Union Tel. Co.* v. *Milling Co.* (1910), 218 U. S. 406, 416, 31 Sup. Ct. 59, 54 L. Ed. 1088, 36 L. R. A. (N. S.) 220, 21 Ann. Cas. 815.

The act of Congress affecting interstate commerce, in

its original scope, literally affected common carriers engaged in the transportation of persons and property. 5. Later, although such common carriers as transmitted dispatches by wire or wireless, by express mention, were included by amendment of the act of Congress, very little, if any, change was made in the wording of the act on the subject of transportation and delivery. There is nothing in the act that expressly provides against, or a penalty for, negligence in delivery of interstate commerce by any common carrier. A construction of said act to include negligence is prevented by §10, 1 Fed. Stat. Ann. Supp. (1912) p. 117, §8574 U. S. Comp. Stat. 1916, which provides that any common carrier, or any person representing such common carrier, who shall wilfully do, or cause to be done, or shall willingly suffer or permit to be done, any act, matter or thing in this act prohibited, or who shall wilfully omit or fail to do any such act, or who shall cause or wilfully suffer or permit any act, matter or thing so directed or required by this act to be done, shall be guilty of an infraction of this act and shall upon conviction be subject to a fine not to exceed $5,000. In our opinion the provisions of the act of Congress relate specifically to and provide a penalty for only such conduct as is the result of deliberation and intention, and do not relate to mere neglect in individual cases provided against by the Indiana statute, or by the common law, and such construction is further supported by *Pennsylvania R. Co.* v. *Puritan Coal Mining Co.* (1914), 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867, and others hereinafter cited.

It is held in *Western Union Tel. Co.* v. *Bilisoly* (1914), 116 Va. 562, 82 S. E. 91, that the act of Congress impliedly exempts telegraph companies from any penalty for negligence. The Indiana statute in question not only provides against what may be termed intentional

discrimination in delivery of such messages, but against negligence in such delivery, and names a penalty applicable thereto. *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 74 N. E. 985. The state has deemed it proper, in the exercise of its police power for the benefit of its citizens, to prescribe that such dispatches shall be diligently delivered, and a penalty for negligence in delivery. The Interstate Commerce Act (ch. 104, 24 Stat. at L. 379) has not specifically covered this feature of the service, and has not, therefore, in this manner rendered inoperative the state statute. It is true that the act of Congress provides that all such carriers of interstate commerce, including telegraph companies, shall make regulations in relation thereto, and that the commission shall have power to determine whether the regulations and practices of the common carrier are unjust or unreasonable, or unjustly discriminatory, and to enforce such regulations, and for action by the commission upon complaint; but this cannot be said to be a provision by Congress regulating either generally or specifically. It rather leaves to such carrier the making of such regulations, and on such features of its service as it may deem needful and reasonable. If, as has been shown, the mere grant by Congress to the commission of power to make regulations is not an exclusion of the power of the state, the requirement that interstate carriers shall make regulations is not such an exclusion, especially in the absence of a showing that the carrier has made such regulations as specifically cover negligence in delivery, and that this action of the carrier has been adopted or approved by the commission.

The Interstate Commerce Act, *supra,* was amended June 18, 1910. Since said amendment it has been held in quite a number of the states that by this amendment Congress has not only entered the field of regulation of

interstate telegraphic business, but has entirely covered the subject to the exclusion of all state laws relating thereto.

These decisions are to a great extent based upon *Western Union Tel. Co.* v. *Brown* (1913), 234 U. S. 542, 34 Sup. Ct. 955, 58 L. Ed. 1457. We understand the essence of this decision to be that a state may not enforce a liability or penalty provided by and peculiar to the state where an action is brought for negligence occurring in another state, or in the District of Columbia; the other state, or the United States, respectively, having the exclusive jurisdiction as to the amount and measure of recovery. And, further, this decision holds that whatever authority a state may possess over the delivery of interstate messages by telegraph companies within its limits, the state does not have power to regulate the delivery of messages in other states. There is not involved by either of these propositions a decision of the question as to whether under an act of Congress, or action of the Interstate Commerce Commission, the matter of interstate commerce has been so exclusively taken over as to render nugatory all authority as to the several states in reference thereto.

The decisions, based upon said amended act of Congress, also cite on this point the decision in *Cincinnati, etc., R. Co.* v. *Rankin* (1915), 241 U. S. 319, 327, 36 Sup. Ct. 555, 558, 60 L. Ed. 1022, and the following is quoted therefrom: "It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with the strict requirements of the Federal statutes or become subject to heavy penalties, and in respect of transactions in the ordinary course of business it is entitled to the presumption of right conduct."

It is claimed that said decision supports a rule that

as Congress has required interstate carriers, including telegraph companies, to file with the Interstate Commerce Commission rules, regulations and practices adopted by them relating to interstate business, and has provided that the rules and regulations so filed shall be deemed reasonable and just until changed by the Interstate Commerce Commission, Congress has "not only taken possession of the field of interstate commerce by telegraph companies, but has also specifically prescribed the rules which shall govern the transaction of such commerce."

We do not so conclude from the decision in the Rankin case. In that case, the plaintiff, Rankin, had shipped over defendant's road a carload of mules from Kentucky to Georgia, and had signed and accepted a through bill of lading which stated that it was a "contract for limited liability in the transportation of live stock at reduced rates," and that, for the lowest rate provided, the liability for negligent injury to horses and mules was not to exceed $75 per head. The published freight rates provided an increased freight charge for a higher valuation. Some of the animals were killed in a wreck, and the shipper sued to recover at a valuation of $250 per head. The defendant answered that its liability for negligence was limited, as shown by the contract set out in the complaint, because it had published and filed with the Interstate Commerce Commission its rules and regulations as to such rates and limitations, and the freight rate was chosen by the shipper.

Inasmuch as a contract limiting liability for negligence is not valid in that respect unless the carrier's rules and regulations, as to limitation, are filed with the commission, it was argued that no federal question was presented in the above case, because there was no affirmative proof showing actual compliance by the road with the Interstate Commerce Act. In discussing whether a

federal question was involved, the Supreme Court made the statement hereinbefore quoted, and further stated: "The law 'presumes that every man, in his private and official character, does his duty, until the contrary is proved; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption * * *'." The statement quoted applies only to the argument as to whether a federal question is involved, upholding a right of review by the federal court, and is not a holding that, by such presumption, the state law has been suspended. After this holding, that such presumption is enough to sustain jurisdiction in the federal court, the court decides that as the signed agreement recited that lawful alternate rates, based upon alternate valuations, were offered, such recitals constitute such admissions by the shipper as to make a *prima facie* case against him, and that if he wishes to contradict his own admissions the burden is upon him. Thus it will be seen.that if this decision can be construed to hold that it will be presumed that an interstate carrier has filed its regulations and practices, and that the same are approved, such presumption is rebuttable.

Can it be that a rebuttable presumption, that the carrier has published and filed its rules and regulations covering the subject of the state statute, and that, by operation of law, they are approved because they are not disapproved by the commission, shows such action by Congress or by the commission as to suspend the state's powers over the subject? To so hold borders on holding that whether the state's jurisdiction is interrupted depends upon an act of an interstate carrier; and it would further result that the state law would be suspended not in general and as to all carriers, as would be the result of an act of Congress or an act of the commission, but suspended as to a carrier which had complied and not suspended as to a carrier which had not

complied. Such a diversity of effect may properly result, as between shippers and carriers, when the terms of their several contract liabilities are concerned, but such cannot be the result where the force of a state statute affecting all parties and carriers alike is involved. The holdings that Congress must act, or the Interstate Commerce Commission, authorized by

5.  Congress, must act, upon the specific matter covered by the state statute before the state statute is rendered inoperative, and the holdings making careful distinction between specific matters covered by the act of Congress and the state law, have not been destroyed by the amendment referred to, but remain as guides as to whether by any act of Congress, or amendment thereof, or by any act of the commission, the state's powers have been superseded. Further support to our conclusion is found in *Pennsylvania R. Co.* v. *Puritan Coal Mining Co., supra,* and *Pennsylvania R. Co.* v. *Sonman Shaft Coal Co.* (1916), 242 U. S. 120, 37 Sup. Ct. 46, 61 L. Ed. 188, wherein it is held that, for the recovery of damages occasioned by neglect of the carrier of its common-law or statutory duty to furnish such cars as the needs of the shippers' business require, the state courts have jurisdiction, and that the manifest purpose of the proviso in §22 of the Interstate Commerce Act (§8595 U. S. Comp. St. 1916), construed with §§8 and 9 thereof (§§8572, 8573 U. S. Comp. St. 1916), none of which were changed by the amendment of 1910, is to "make it plain that such appropriate common law and statutory remedies as can be enforced consistently with the scheme and purpose of the act are not abrogated or displaced." Said decisions further hold that the act does not supersede the jurisdiction of the state courts in any case, new or old, where the decision does not involve the determination of matters calling for the exercise by the commission of administrative discretion. In other

words, the act covers such administrative matters as the filing of regulations and the justness and reasonableness of the same, but does not exclusively cover negligent failure by carriers to comply with the regulations filed, nor negligent performance of common-law or statutory duties; and therefore does not render inoperative the common-law or state statutory regulations which are in aid of interstate commerce, and not an interference therewith. Congress has not by the amendment of 1910, as is claimed, rendered inoperative the state's statute.

Finding no error in the matters assigned, the judgment below is affirmed.

NOTE.—Reported in 115 N. E. 773. Telegraphs and telephones: (a) negligence in delivery of messages, action for penalty, 37 Cyc 1702, 1706; (b) statutes penalizing negligent handling of telegrams as regulation of interstate commerce, 2 Ann. Cas. 513, 21 Ann. Cas. 819, 36 L. R. A. (N. S.) 220; (c) right of addressee of telegram to sue for failure to deliver, 2 Ann. Cas. 398, 13 Ann. Cas. 356.