## WESTERN UNION TELEGRAPH COMPANY v. HANLIN.

### [No. 9,965.    Filed April 1, 1920.]

1. COMMERCE.—*Interstate Regulation.—Exclusion of States.— Telegraph and Telephone.*—Congress having by act of June 18, 1910, 36 Stat. at L. 544, assumed jurisdiction to regulate telegraphic business of an interstate nature, such act suspends all state regulations, statutes and decisions in so far as they conflict therewith.    p. 126.

2. TELEGRAPHS AND TELEPHONES.—*Interstate Telegrams.—Power to Make Regulations.*—Rules and regulations applicable to interstate messages, prescribed by a telegraph company in accordance with the authority conferred by the act by which congress assumed jurisdiction to regulate interstate telegraphic business, so long as they have not been declared unreasonable, are binding.    p. 126.

3. TELEGRAPHS AND TELEPHONES. — *Interstate Telegrams.— Stipulation Limiting Liability.—Requiring Claims.—Commerce.* —Stipulations on the message blank that no recovery can be had beyond the toll paid for the message unless repeated upon payment of extra charge, and requiring claims for damages to be presented within sixty days, are binding as to the parties to an interstate message, by virtue of the authority conferred upon the company by the act of Congress of June 18, 1910, 36 Stat. at L. 544.    p. 127.

From Jay Circuit Court; *E. E. McGriff*, Judge.

Action by John A. Hanlin against the Western Union Telegraph Company. From a judgment for the plaintiff, the defendant appeals. *Reversed.*

*Barrett, Morris & Hoffman, John M. Smith* and *Albert T. Benedict,* for appellant.

*Charles E. Schwartz,* for appellee.

McMAHAN, J.—This is an action by appellee to recover damages from appellant for failure to correctly transmit and deliver a telegram sent by a firm of commission merchants in Buffalo, N. Y., to appellee, a stock dealer at Portland, Indiana, by reason of which appellee claimed damages. The telegram as delivered to appellant at Buffalo for transmission read as follows:

"Prospects look higher for hogs selling fifty-five today."

When delivered to appellee it read "ninety-five" instead of "fifty-five."

Appellant contends that the message, being interstate commerce, was by act of Congress of June 18, 1910, 36 Stat. at L. 544, placed wholly under the supervision of the Interstate Commerce Commission. This act amends the act to regulate commerce and provides that said act shall be applicable to all interstate telegraph business; that, as to all interstate business, telegraph, telephone and cable companies are common carriers within the meaning and purpose of the act and, as to their interstate business, telegraph companies must print and publish their rates, rules, classifications, regulations and practices, and file the same with the Interstate Commerce Commission, and that such rates, rules, regulations, classifications and practices established by them shall be reasonable. It expressly authorizes them to classify messages into day, night, repeated and unrepeated, and such other classes as are just and reasonable, with authority to prescribe different rates therefor, and imposes penalties for any attempt to evade such published rates, rules, practices and regulations, and confers upon the Interstate Commerce Commission jurisdiction to determine what rates, regulations, or practices are just and reasonable, and declares that such rules and regulations established by telegraph companies or other common carriers are deemed just and reasonable until changed by the Interstate Commerce Commission. *Western Union Tel. Co.* v. *Lee* (1917), 174 Ky. 210, 192 S. W. 70, Ann. Cas. 1918C 1026; *Western Union Tel. Co.* v. *Bank, etc.* (1916), 53 Okla. 398, 156 Pac. 1175.

In *Gardner* v. *Western Union Tel. Co.* (1916), 231 Fed. 405, 145 C. C. A. 399, the plaintiff sued in the fed-

eral court for delay in delivering an unrepeated inter-state message, without having presented his claim within the time required by the printed conditions on the back of the telegram. It was contended that that case was governed by §9, Art. 23, of the Constitution of Oklahoma, which provides that: "Any provision of any contract or agreement, express or implied, stipulat-ing for notice or demand other than such as. may be provided by law, as a condition precedent to establish any claim, demand, or liability, shall be null and void."

In holding that said constitutional provision did not apply for the reason that the telegram involved was interstate commerce, it was said: "Congress has taken possession of the field of interstate commerce by tele-graph and it results that the power of the states to legis-late with reference thereto has been suspended. The great necessity that commerce between the states should be free from such interference applies in a marked degree to interstate commerce by telegraph. If the regulation which is pleaded in bar in this suit should be held valid in Kansas, and void in Oklahoma, and the illustration may. be extended to all the states of the Union, then the power of the United States to regulate commerce between the states in relation to telegraphic business would not only be directly interfered with, but destroyed. * * * We are therefore of the opinion that Congress having taken possession of the field of interstate commerce by telegraph, the provision of the Constitution of Oklahoma relied upon has become in-operative for the purpose of striking down the regula-tion in question. Whether the regulation is a reason-able one or not is in our judgment a question for the Interstate Commerce Commission to determine."

*Western Union Tel. Co.* v. *Bank, etc., supra,* is a case very much like the one at bar. It was there said: "The fact that plaintiff was the sendee of the message, and

not the sender, can make no difference. The weight of authority is that the sendee is bound by the regulations prescribed by defendant in relation to the time in which a claim for damages shall be presented and which limit liability for negligence in transmitting an unrepeated message. The foundation of plaintiff's action is the alleged negligence of the defendant in transmitting and delivering the telegram as originally delivered to it. Before plaintiff would be entitled to maintain an action there must necessarily be some duty owing by defendant to him from a breach of which would flow such right. The contract between the sender of said message and the defendant was for the benefit of plaintiff, and, without the delivery of said message to defendant by the sender and without defendant having undertaken to transmit and deliver same to plaintiff, there would have been no duty owing to plaintiff by defendant, and hence no negligence in the absence of such a contract for which plaintiff could maintain an action." See, also, *Haskell, etc., Co.* v. *Postal, etc., Co.* (1915), 114 Me. 277, 96 Atl. 219; *Meadows* v. *Postal, etc., Co.* (1917), 173 N. C. 240, 91 S. E. 1009.

The Supreme Court of the United States, in *Postal, etc., Co.* v. *Warren-Godwin Lumber Co.* (1919), 251 U. S. 27, 40 Sup. Ct. 69, 64 L. Ed. 118, said: "As it is apparent on the face of the Act of 1910 that it was intended to control telegraph companies by the Act to Regulate Commerce, we think it clear that the Act of 1910 was designed to and did subject such companies as to their interstate business to the rule of equality and uniformity of rates which it was manifestly the dominant purpose of the Act to Regulate Commerce to establish, a purpose which would be wholly destroyed if, as held by the court below, the validity of contracts made by telegraph companies as to their interstate commerce business continued to be subjected to the control of di-

vergent and it may be conflicting local laws.    *    *    *
But we need pursue the subject no further, since, if not
technically authoritatively controlled, it is in reason
persuasively settled by the decision of the Interstate
Commerce Commission in dealing in the case above cited
(*Clay County Produce Co.* v. *Western Union Tel. Co.,*
44 Int. Com. Rep. 670) with the very question here
under consideration as the result of the power conferred
by the Act of Congress of 1910; by the careful opinion
of the Circuit Court of Appeals of the Eighth Circuit
dealing with the same subject (*Gardner* v. *Western
Union Telegraph Co.,* 231 Fed. Rep. 405); and by the
numerous and conclusive opinions of state courts of last
resort which in considering the Act of 1910 from various
points of view reached the conclusion that that act was
an exertion by Congress of its authority to bring under
federal control the interstate business of telegraph com-
panies and therefore was an occupation of the field by
Congress which excluded state action."    Citing with ap-
proval *Western Union Tel. Co.* v. *Bank, etc., supra;
Meadows* v. *Postal, etc., Co., supra; Gardner* v. *Western
Union Tel. Co., supra; Western Union Tel. Co.* v. *Bilisoly*
(1914), 116 Va. 562, 82 S. E. 91.

*Western Union Tel. Co.* v. *Bilisoly, supra,* was an ac-
tion to recover the statutory penalty for alleged delay in
delivering a telegraphic message.    The court held that
such an action would not lie, saying: "By an act of
Congress approved June 18, 1910, telegraph companies,
so far as interstate business is concerned, have been
placed under the direct supervision of the Interstate
Commerce Commission, and are subject, so far as ap-
plicable, to the same rules, regulations, restrictions and
penalties that are imposed upon common carriers.    This
act has occupied the entire field and taken complete con-
trol of the regulation of telegraph companies, and while
it has impliedly exempted them from any penalty for

negligence it has provided a severe maximum penalty for intentional discrimination.  *  *  *  It would be inconvenient as well as unnecessary to recite the detailed provisions of the act of Congress approved June 18, 1910.   It is sufficient to say that by it Congress has occupied the field of regulation with respect to interstate telegrams, and hence the State statute imposing a penalty for failure to make prompt delivery can no longer be invoked in such cases.   The act of Congress has ousted the State of jurisdiction over the subject."

The liability of a common carrier of telegrams for mental suffering is, since the act of Congress of June 18, 1910, *supra*, controlled by the federal law which supersedes state regulations and decisions.   *Western Union Tel. Co.* v. *Schade* (1917), 137 Tenn. 214, 192 S. W. 924.

In *Bailey* v. *Western Union Tel. Co.* (1916), 97 Kan. 619, 156 Pac. 716, the defendant answered that the receipt, transmission and delivery of the message was a part of interstate commerce, and was governed by the act of Congress of June, 1910, and that by the defendant's rule its liability was limited in cases of unrepeated messages to the amount received for sending the same. The court in holding this answer good said:   "Prior to the passage of the act of Congress in June, 1910, whatever may have been the law governing the right to recover damages on account of the delay in the delivery of telegraph messages, since the passage of that act the decisions appear almost unanimous that limitations on the liability of telegraph companies for damages caused by delay in delivering the messages are governed by the regulation above set out, and that no other recovery can be had."   To the same effect see *Durre* v. *Western Union Tel. Co.* (1917), 165 Wis. 190, 161 N. W. 755.

*Meadows* v. *Postal, etc., Co., supra*, was also an action to recover damages for failure to correctly transmit and deliver an unrepeated telegram.   It was there held that,

Congress having assumed entire control of interstate messages, the decisions of the federal courts are controlling, and thereunder a stipulation on the message blank that no recovery can be had beyond the toll paid for the message, unless repeated upon the payment of an extra charge, is valid and enforceable, when the suit is brought upon the contract, in the courts of that state. This case was followed in *Norris* v. *Western Union Tel. Co.* (1917), 174 N. C. 92, 93 S. E. 465.

The Supreme Court of the United States in *Western Union Tel. Co.* v. *Boegli* (1919), 251 U. S. 315, 40 Sup. Ct. 167, 64 L. Ed. 281, in reversing the Supreme Court of this state (187 Ind. 238, 115 N. E. 773) said: "The proposition that the Act of 1910 must be narrowly construed so as to preserve the reserved power of the State over the subject in hand, although it is admitted that that power is in its nature federal and may be exercised by the State only because of nonaction by Congress, is obviously too conflicting and unsound to require further notice.   *   *   *   We are of opinion that the provisions of the statute bringing telegraph companies under the Act to Regulate Commerce as well as placing them under the administrative control of the Interstate Commerce Commission so clearly establish the purpose of Congress to subject such companies to a uniform national rule as to cause it to be certain that there was no room thereafter for the exercise by the several States of power to regulate, by penalizing the negligent failure to deliver promptly an interstate telegram, and that the court below erred therefore in imposing the penalty fixed by the state statute."   See *Western Union Tel. Co.* v. *Boegli* (1920), 189 Ind. 202, 126 N. E. 482.

The Interstate Commerce Act, as amended June, 1910, has expanded until it comprehends and includes 1-2. the questions involved in the case at bar, and, being the supreme law in so far as interstate

telegrams are concerned, suspends the operation of any state statute or regulation, or the force and effect of any decision in opposition thereto, in so far as they conflict with said amendment. From the above authorities, it is clear that Congress having assumed jurisdiction to regulate telegraphic business of an interstate nature, its authority in the premises is supreme, and the rules and regulations prescribed by appellant in accordance with the authority conferred by the act, so long as they have not been declared unreasonable, are binding upon the parties hereto.

It follows that the conditions printed on the back of the telegram limiting the liability of appellant for mistakes in the transmission or delivery of an unrepeated telegram to the amount received for sending the same, and requiring claims for damages to be presented within sixty days, are binding upon the parties hereto.

The court erred in sustaining the demurrers to the several paragraphs of answer which sought to limit appellant's liability under the contract. Judgment reversed, with directions to grant appellant a new trial, and for further proceedings not inconsistent with this opinion.